85 P.3d 116 (2004)
207 Ariz. 238
STATE of Arizona, Appellee,
v.
Eric Glynn WHITLEY, Appellant.
No. 1 CA-CR 02-0823.
Court of Appeals of Arizona, Division 1, Department D.
February 24, 2004.
*118 Terry Goddard, Attorney General, By Randall M. Howe, Chief Counsel Criminal Appeals Section and Karla Hotis DeLord, Assistant Attorney General, Phoenix, Attorneys for Appellee.
James J. Haas, Maricopa County Public Defender, By Spencer D. Heffel, Deputy Public Defender, Phoenix, Attorneys for Appellant.
OPINION
GARBARINO, Presiding Judge.
¶ 1 The defendant, Eric Glynn Whitley, appeals his conviction and sentence for theft of means of transportation and requests a new trial. For the following reasons, we reverse and remand for a new trial.
FACTUAL AND PROCEDURAL HISTORY
¶ 2 The defendant was charged with and convicted of theft of means of transportation, a class 3 felony. At the close of the trial, the court recessed for jury deliberations. After the jury notified the court that it had reached a verdict, the following dialogue took place:
THE COURT: Let's go back on the record. Show the parties are present with the exception of the defendant, who, counsel, I believe you told me you tried to call him but you have not been able to reached [sic] him; is that correct,
[DEFENSE COUNSEL]: Yes.
THE COURT: I know you asked me in his presence about how long, how quickly he could be here. He said about 15 minutes. I don't know what time it was when you first tried to call him.
[DEFENSE COUNSEL]: I thought it was about five ten after 3:00.
THE COURT: It's been close to 30 minutes since we first tried to calling [sic] him. We tried again. We were unsuccessful. We're not going to wait, unless either party knows some reason why we can't have the verdict. I'm going to let the verdict be reported in his absence. You can advise him of his verdict.
I'm not aware of anything that is preventing you from proceeding to a verdict without the present [sic] of defendant.
[DEFENSE COUNSEL]: I believe that defendant's presence cannot [sic] waived. He's supposed to be here by 4:30. I imagine we take the verdict, and he [sic] if it's an unfavorable one for him, it won't require custody. If he shows up at 4:30.
THE COURT: I understand custody is not required. I'm not going to take him into custody if he's convicted. I'll set a sentencing date.
You're going to do [sic] need to be advised about that, if you think you can get an affidavit to the court indicating he knows the sentencing dates we can proceed.
[DEFENSE COUNSEL]: I can provide an affidavit. I would [sic] going out of town next week, but I can get one to the court, you know, certainly by Wednesday of the week following.
THE COURT: As long as he knows the sentencing date, something he signed he understands his sentencing date, that's fine.
Let's go ahead and call the jury in.
Then I know you haven't specifically waived his presence, but by his absence, he waives his presence.
At this time I will take the verdict.
(Whereupon, the following proceedings took place in the presence of the jury panel.)
THE COURT: The record should reflect the jury is back in the courtroom and counsel.
Ladies and gentlemen, the defense [sic] is not here. We didn't want to have to wait much longer. We will go ahead and [Defense Counsel] can sent [sic] a message to him at his home. He may come in any minute, again, he may not be here. I know you have been waiting about 30 minutes.
All right it's not required he be present for your verdict. Either way we will go ahead.
*119 The clerk proceeded to read the jury's verdict, in the absence of the defendant. At the request of defense counsel, the clerk polled each juror and each juror stated that it was his or her true verdict.
¶ 3 The defendant was sentenced to three years' probation and ordered to complete 200 hours of community service. The defendant filed a timely notice of appeal. The defendant raises a single issue on appeal, contending that the trial court committed reversible error by receiving the verdict in the defendant's absence.
DISCUSSION
¶ 4 "We review the trial court's determination of a defendant's voluntary or involuntary absence for an abuse of discretion." State v. Reed, 196 Ariz. 37, 38, 992 P.2d 1132, 1133 (App.1999); see also State v. Muniz-Caudillo, 185 Ariz. 261, 262, 914 P.2d 1353, 1354 (App.1996) (reviewing the trial court's decision to go forward with the defendant's trial in absentia for abuse of discretion).
¶ 5 Criminal defendants possess a constitutional and procedural right to be physically present for the return of jury verdicts. State v. Levato, 186 Ariz. 441, 444, 924 P.2d 445, 448 (1996); Ariz. R.Crim. P. 19.2 (stating that the defendant has a right to be present at every stage of the trial, including the return of the verdict). This right is provided to a defendant by Arizona Rule of Criminal Procedure 19.2 and the Sixth and Fourteenth Amendments to the United States Constitution. Levato, 186 Ariz. at 444, 924 P.2d at 448. "[A] defendant may waive the right to be present at any proceeding by voluntarily absenting himself or herself from it." Ariz. R.Crim. P. 9.1. A voluntary waiver of the right to be present requires true freedom of choice. State v. Garcia-Contreras, 191 Ariz. 144, 147, ¶ 11, 953 P.2d 536, 539 (1998). A trial court may infer that a defendant's absence from trial is voluntary and constitutes a waiver if a defendant had personal knowledge of the time of the proceeding, his or her right to be present, and he or she had received a warning that the proceeding would take place in his absence if he or she failed to appear. Muniz-Caudillo, 185 Ariz. at 262, 914 P.2d at 1354. Bearing in mind that the courts indulge every reasonable presumption against the waiver of fundamental constitutional rights, we look at the facts of this case. State v. McGriff, 7 Ariz.App. 498, 503, 441 P.2d 264, 269 (1968).
¶ 6 On July 3, 2002, at 2:34 p.m., the jury retired to deliberate. Prior to jury deliberations, the judge was present when defense counsel asked the defendant how quickly he could return for the reading of the verdict. At that time, the defendant indicated that he could be back in about fifteen minutes from the time that he received notice that the jury had reached a verdict. At 3:32 p.m. the court was back in session discussing the defendant's absence. Defense counsel explained that he first tried to call the defendant at approximately 3:05 p.m. or 3:10 p.m., but was unable to reach the defendant. Counsel then advised the court that he could not waive the defendant's presence and that the defendant had earlier informed counsel that he would return at 4:30 p.m. At 3:35 p.m., the jury returned to the courtroom and announced the verdict.
¶ 7 The judge decided to hear the verdict in the absence of the defendant, finding that the defendant had waived his presence by his absence. There is no evidence that the defendant knew the time of the proceeding, knew of his right to be present, or that the proceeding would continue in his absence if he failed to appear. See Muniz-Caudillo, 185 Ariz. at 262, 914 P.2d at 1354. We are particularly concerned with the defendant's lack of knowledge regarding the culmination of the jury's deliberation. Defense counsel stated that the defendant would be returning at 4:30 p.m. Moreover, the record reflects that the court tried to call the defendant, but was unable to reach him. The facts indicate that the defendant had no notice that the proceeding would commence any time before 4:30 p.m. There is nothing in the record to indicate that the defendant received notice that the jury had reached a verdict or that the court was ready to proceed. Without this information, the defendant could not voluntarily waive his right to attend by true freedom of choice. See Garcia-Contreras, *120 191 Ariz. at 147, ¶ 11, 953 P.2d at 539; Muniz-Caudillo, 185 Ariz. at 262, 914 P.2d at 1354.
¶ 8 The State, citing to Reed and State v. Suniga, 145 Ariz. 389, 701 P.2d 1197 (App.1985), claims that the defendant has the burden of establishing that his absence was involuntary. Placing the burden on the defendant presupposes that the defendant had knowledge of the fact that the hearing was going forward with or without his presence. In Suniga, this Court stated that when a defendant has personal notice of the time of the hearing, has notice of the right to be present, and is warned that the proceeding will go forward in the defendant's absence, the trial court may presume that the defendant's absence is voluntary. 145 Ariz. at 392, 701 P.2d at 1200. The burden is then on the defendant to prove otherwise. Id.; see also Reed, 196 Ariz. at 38-39, 992 P.2d at 1133-34 (placing the burden on the defendant to establish absence was involuntary when the defendant was aware of when the proceeding would take place, his right to be present, and had knowledge that the proceeding would go forward in his absence). The burden is on a defendant to prove that the defendant's absence was involuntary only when the defendant had notice of the time of the proceeding, had notice of the right to be present, and had knowledge that the trial would continue in the defendant's absence. Because the defendant in the present case did not have notice of the time of the proceeding, there is no burden on the defendant to demonstrate that his absence was involuntary.
¶ 9 The State further asserts that criminal proceedings conducted in violation of the defendant's right to be present may be reviewed for harmless error. The dissent agrees with the State that we should apply a harmless error analysis and affirm the defendant's conviction. In contrast, the concurrence suggests that the defendant's absence constitutes structural error. I respectfully disagree with both positions.
¶ 10 First, our supreme court recently held that the denial of a jury during the sentencing phase of a capital case constitutes trial error, not structural error. State v. Ring, 204 Ariz. 534, 552, ¶¶ 45-46, 65 P.3d 915, 933 (2003). The supreme court defined "structural errors" as errors that "deprive defendants of `basic protections' without which `a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence ... and no criminal punishment may be regarded as fundamentally fair.'" Id. at 552, ¶ 46, 65 P.3d at 933 (quoting Neder v. United States, 527 U.S. 1, 8-9, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999)).
¶ 11 In the present case, there has been no showing that the defendant was deprived of a "basic protection." Moreover, the jury had already made its determination during deliberations. As such, it is somewhat of a stretch to say that the error occurred during the defendant's trial. In light of the holding and the definition of structural error found in Ring, I cannot say that the error in the present case rises to the level of structural error.
¶ 12 I also disagree with the dissent's application of a harmless error analysis. Although I agree that trial error is generally subject to a harmless error analysis, this is a case in which I cannot envision a circumstance when the error would not be harmless. Because I cannot perceive that our supreme court would promulgate and effectuate a rule that contains no remedy, I disagree with applying a harmless error analysis in this circumstance. See Ariz. R.Crim. P. 19.2 ("The defendant has the right to be present at every stage of the trial, including... the return of the verdict.").
¶ 13 There are numerous rules promulgated by the supreme court that, when violated, are subject to a harmless error analysis. See, e.g., State v. Lee, 189 Ariz. 590, 598, 944 P.2d 1204, 1212 (1997) (applying a harmless error analysis to the trial court's improper denial of a severance under Ariz. R.Crim. P. 13.4(A)); State v. Mata, 125 Ariz. 233, 240-41, 609 P.2d 48, 55-56 (1980) (finding that the trial court's failure to abide by Ariz. R.Crim. P. 22.3 was harmless error); State v. Morris, 115 Ariz. 127, 564 P.2d 78 (1977) (finding that the trial court's failure to execute a written plea bargain pursuant to Ariz. R.Crim. P. 17.4 was harmless error); State v. Goff, 25 Ariz.App. 195, 196, 542 P.2d 33, 34 (1975) *121 (applying a harmless error analysis to the court reporter's failure to abide by Ariz. R.Crim. P. 5.6); State v. Armenta, 25 Ariz. App. 62, 63, 540 P.2d 1281, 1282 (1975) (applying a harmless error analysis to the trial court's failure to comply with the language found in Ariz. R.Crim. P. 8.5). However, unlike Rule 19.2 that applies in the present case, there are situations when the violation of the above-cited rules will not be harmless. See, e.g., State v. Robin, 112 Ariz. 467, 543 P.2d 779 (1975) (reversing the defendant's conviction when the trial court communicated with the jury outside of the defendant's and defense counsel's presence); State v. Lee, 112 Ariz. 283, 284, 541 P.2d 383, 384 (1975) (reversing the defendant's conviction based upon the trial court's failure to follow Ariz. R.Crim. P. 17.4); State v. Daniels, 96 Ariz. 375, 376, 396 P.2d 4, 5 (1964) (reversing the defendant's conviction based on the trial court's failure to grant a continuance in order for the defendant to obtain a transcript from the preliminary hearing); State v. Curiel, 130 Ariz. 176, 184, 634 P.2d 988, 996 (App.1981) (setting aside convictions and remanding for a new trial when the defendant's charges were improperly joined pursuant to Rule 13.3(a)). Applying a harmless error analysis to a Rule 19.2 violation, which provides the defendant a right to be present during the reading of the verdict, would render that portion of the rule meaningless. See Weeks v. United States, 232 U.S. 383, 391-92, 34 S.Ct. 341, 58 L.Ed. 652 (1914) (explaining that if the government was allowed to introduce illegally obtained evidence, the Fourth Amendment would be of no value).
¶ 14 The courts have been empowered to protect a criminal defendant's constitutional and procedural rights. See Marquez v. Rapid Harvest Co., 1 Ariz.App. 562, 565, 405 P.2d 814, 817 (1965) (explaining that it is this Court's "absolute duty to protect constitutional rights"). When necessary, the courts have adopted remedies to protect these rights. See Silverthorne Lumber Co. v. United States, 251 U.S. 385, 392, 40 S.Ct. 182, 64 L.Ed. 319 (1920) (holding that evidence discovered as a result of the government's unlawful actions is to be excluded at trial in order to avoid "reduc[ing] the Fourth Amendment to a form of words"); Weeks, 232 U.S. at 398-99, 34 S.Ct. 341 (excluding evidence in order to enforce a defendant's Fourth Amendment right to be free from illegal searches and seizures).
¶ 15 The violations of Rule 19.2 and the defendant's Sixth and Fourteenth Amendment rights were not justified by a delay of less than one hour. The verdict was read one hour after the court recessed for jury deliberations, and, at most, thirty minutes after the court first attempted to contact the defendant. The defendant's counsel advised the court that he could not waive the defendant's presence. Counsel also avowed that the defendant would return at 4:30 p.m., which was less than one hour from the time the verdict was read. Even with this avowal, the trial court allowed the verdict to be read in the absence of the defendant. As such, reversal is necessary in order to protect the defendant's right to be present during the reading of the verdict, especially in the face of such an unjustified violation.[1]
CONCLUSION
¶ 16 For the foregoing reasons, we reverse the defendant's conviction and sentence and we remand for a new trial.
KESSLER, Judge, concurring.
¶ 17 This Court is unanimous in concluding the trial court erred in having the jury return its verdict in the absence of the defendant. Our only difference is whether such error requires reversal.
¶ 18 I concur that the error requires reversal for three reasons. First, I concur with the opinion that applying a harmless error *122 rule in this case could only lead to making the right of a defendant to be present at the return of the verdict a meaningless formality.
¶ 19 Second, and related to the first reason, even if the error here were to be subject to harmless error analysis, we cannot say beyond a reasonable doubt that the error was harmless. At least two courts have held that receiving verdicts in absentia could not be determined to be harmless because of the possible psychological impact of the defendant's presence when jurors must announce their verdict. Larson v. Tansy, 911 F.2d 392, 396 (10th Cir.1990) (erroneous absence of defendant at return of verdict was not harmless error because of significant psychological effect presence can have on jury; court has no way to determine if erroneous return of verdict in absentia was harmless error); Lee v. State, 509 P.2d 1088, 1093-94 (Alaska 1973) (same).[2]Compare State v. Dann, 205 Ariz. 557, 571-72, 575, ¶¶ 52-54, 72, 74 P.3d 231, 245-46, 249 (2003) (no prejudice where in-chambers conferences, side-bar conferences and matters only relating to legal issues are discussed in the defendant's absence and potential effect can be reviewed by court); United States v. Canady, 126 F.3d 352, 361-62 (2d Cir.1997) (recognizing impact defendant's presence may have on return of verdict and applying same analysis to bench decision). As our supreme court has repeatedly noted, issues of credibility are generally not amenable to an appellate court concluding that the jury would have reached the same result as the judge in sentencing. E.g., State v. Ring, 206 Ariz. 150, 152, ¶¶ 12-13, 76 P.3d 421, 423 (Supplemental Opinion)(2003); State v. Hoskins, 204 Ariz. 572, 574, ¶ 6, 65 P.3d 953, 955 (2003). The same psychological effect can be present on a return of a verdict.
¶ 20 Moreover, a court cannot presume an error is harmless where that error deprives a party of an essential right and the nature of the error prevents a court from determining whether the error was prejudicial. Rather, in such cases the prejudice should be conclusively presumed. Perez v. Community Hosp. of Chandler, 187 Ariz. 355, 359, 929 P.2d 1303, 1307 (1997); Perkins v. Komarnyckyj, 172 Ariz. 115, 119-20, 834 P.2d 1260, 1264-65 (1992). This rule applies even where the error is not structural in nature. Estate of Reinen v. Northern Arizona Orthopedics, Ltd., 198 Ariz. 283, 290, ¶ 26, 9 P.3d 314, 321 (2000).
¶ 21 Third, I concur in the result here because I conclude that the erroneous denial of the defendant's constitutional right to be present when the jury returned a verdict of guilt or innocence is structural error. While our supreme court has applied one definition of structural error in State v. Ring (Ring III), 204 Ariz. 534, 65 P.3d 915 (2003), disagreed with by Summerlin v. Stewart, 341 F.3d 1082, 1117-20 n. 20 (9th Cir.2003), cert. granted in part on other grounds by Schriro v. Summerlin, ___ U.S. ___, 124 S.Ct. 833, 157 L.Ed.2d 692 (2003), structural error has been applied in varying contexts using varying definitions and reasoning. As explained below, whether an error is deemed structural often will depend on which definition or reasoning is used. Some errors which courts have consistently reaffirmed as structural in nature would not pass muster if we literally applied the most stringent definitions of structural error.
¶ 22 It is difficult, if not impossible, to reconcile these cases to achieve a single, unifying principle for structural error. Instead, I propose a supplemental test to be applied where error is held not to be structural under the current tests for structural error. Where a traditional constitutional right is at issue and the various tests for structural error would result in applying harmless-error analysis, I would hold that structural error occurs where: (1) the error deprives a defendant of a fundamental constitutional right traditionally attached to a criminal proceeding; (2) such deprivation would undermine the public's confidence in the fairness of that process; and (3) there is no effective means to quantify or determine the effect that error had on the ultimate decision in the case.
¶ 23 I suggest this test in light of two overriding principles. First, we know "[v]irtually *123 any error, under particular circumstances, can be harmless." State v. Hickman, 205 Ariz. 192, 198, ¶ 29, 68 P.3d 418, 424 (2003) (quoting State v. Harrison, 195 Ariz. 1, 6, ¶ 21, 985 P.2d 486, 491 (1999) (McGregor, J., dissenting)). While recognition of that fact permits a court to limit the instances in which structural error analysis should apply, that limitation must be based on a reasoned approach, examining the context of the violation. Otherwise, the analysis can be a "slippery slope that could be used to justify over-looking every structural error [such as] denial of a jury trial or the right to counsel." Ring III, 204 Ariz. at 565, ¶ 106, 65 P.3d at 946 (Feldman, J., dissenting) (quoting State v. Anderson, 197 Ariz. 314, 323, ¶¶ 21-22, 4 P.3d 369, 378 (2000)). Accordingly, we need to ensure that structural error analysis does not minimize the need to protect traditional constitutional rights which underscore the public's faith in the criminal trial process.
¶ 24 Second, while many of the formulations for the test for structural error look at the error's effect on the truth-finding function of the trial process, at least four justices of the United States Supreme Court have stated that structural error should not be so limited. Rather, "certain constitutional rights are not, and should not be, subject to harmless-error analysis, because those rights protect important values that are unrelated to the truth-seeking function of the trial," which might abort the basic trial process and render a trial fundamentally unfair. Arizona v. Fulminante, 499 U.S. 279, 295, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991) (White, J., dissenting) (quoting Justice Stevens' concurrence in Rose v. Clark, 478 U.S. 570, 578, 587, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986)).
¶ 25 The above supplemental test is similar to the test the United States Supreme Court used in analyzing a defendant's right to a public trial under Waller v. Georgia, 467 U.S. 39, 49 n. 9, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984). It also meets the underlying concerns stated in Summerlin, Justice White's dissent in Fulminante and most of the concerns of the more restrictive tests used for structural error.
¶ 26 Applying this test to the important issue of the defendant being present before the jury, Dann, 205 Ariz. at 575, ¶ 72, 74 P.3d at 249, I conclude the return of the verdict in absentia here was structural error. The constitutional right of the defendant to be present at the climax of the trialthe return of the verdict of guilt or innocenceis a traditional right. Given both the symbolic nature of the jury returning its verdict in the presence of the defendant and the possible effect of the defendant's presence on any juror's right to question or change that juror's vote, Larson, 911 F.2d at 396, Lee, 509 P.2d at 1093-94, erroneously returning a verdict in absentia undermines the public's confidence in the fairness of the process. Given the nature of the error, whether it be termed structural or a violation of an essential right, there is no way to determine what effect the defendant's absence had on each juror's decision when the jury was polled.
The Conundrum of Structural Error
¶ 27 As evidenced by recent decisions by both our supreme court and the Ninth Circuit Court of Appeals, the concept of structural error has troubled our best legal minds. For example, in dealing with the issue of structural error where the defendant was not present when the jury returned a sentence (as opposed to a determination of guilt or innocence), the Ninth Circuit at first held that the error was structural. Rice v. Wood, 44 F.3d 1396 (9th Cir.1995). The following year, the en banc Ninth Circuit vacated that decision. Rice v. Wood, 77 F.3d 1138 (9th Cir.1996). In a 6-5 vote, the en banc court held the error was harmless. Judge Hawkins, one of the six-judge majority, concurred, limiting his concurrence on the grounds that the absence "under the facts of this case does not constitute structural error." Rice, 77 F.3d at 1146. (Emphasis supplied.)
¶ 28 In State v. Levato, 183 Ariz. 558, 561, 905 P.2d 567, 570 (App.1995), this Court held that error resulting in the absence of a defendant at the return of a verdict of guilt was structural error, relying in part on the earlier Ninth Circuit panel's decision in Rice. Our supreme court vacated Levato, noting the *124 constitutional right of the defendant to be present at the return of the verdict, but holding the structural error issue did not have to be reached. State v. Levato, 186 Ariz. 441, 444 n. 2, 924 P.2d 445, 448 (1996).
¶ 29 Differing approaches are also exemplified in applying the Supreme Court's decision in Ring v. Arizona (Ring II), 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), which invalidated Arizona's statutory scheme that had judges imposing the death penalty. In Ring III, 204 Ariz. at 552-55, ¶¶ 44-53, 65 P.3d at 933-36, a divided Arizona Supreme Court held that allowing a judge to impose the death penalty under that former system was subject to harmless-error analysis. The court defined structural error as that error which deprives the defendant of basic protections without which a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence and no criminal punishment may be regarded as fundamentally fair. Ring III, 204 Ariz. at 552, ¶ 45, 65 P.3d at 933 (citing Neder v. United States, 527 U.S. 1, 8-9, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999)). Moreover, the error must infect the entire trial process from beginning to end. (Ring III, 204 Ariz. at 553, ¶ 46, 65 P.3d at 934). Justice Feldman, joined by Chief Justice Jones, dissented from that harmless-error analysis, reasoning that errors involving the composition of the court or jury affect the legitimacy of the entire proceeding, making it impossible to predict what a jury would have done if one had been impaneled. Id. at 566, ¶ 107, 65 P.3d at 947.
¶ 30 Subsequently, the Ninth Circuit in Summerlin disagreed with Ring III and held that the failure to have a jury determine whether the death penalty should be imposed was structural error. Summerlin, 341 F.3d at 1117-20 n. 20.[3] The Ninth Circuit, citing to Nguyen v. United States, 539 U.S. 69, 123 S.Ct. 2130, 156 L.Ed.2d 64 (2003), held that any decision of an improperly constituted judicial body must be vacated. It defined structural error as a defect "affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." Summerlin, 341 F.3d at 1118 (quoting Fulminante, 499 U.S. at 310, 111 S.Ct. 1246). It also described structural error as being present when "a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence ... and no criminal punishment may be regarded as fundamentally fair." Summerlin, 341 F.3d at 1118 n. 20 (quoting Rose, 478 U.S. at 577-78, 106 S.Ct. 3101). Underlying the concern in Summerlin was the fact that, unlike mere trial error, structural error offered no means short of speculation to determine what the jury would have done absent the error. 341 F.3d at 1117-18 n. 20.
¶ 31 The difficulty of identifying structural error results from varying judicial definitions of the concept. As Justice White explained in his dissent in Fulminante, depending on which definition is used, a different result can be reached. 499 U.S. at 295, 111 S.Ct. 1246. Thus, identifying structural error is more difficult than identifying obscenitywe can't be sure we know it even when we see it.
¶ 32 For example, in Ring III, our supreme court identified Gideon v. Wainwright, 372 U.S. 335, 342-44, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) and Geders v. United States, 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976), as two cases involving structural error. 204 Ariz. at 552, ¶ 46 n. 9-10, 65 P.3d at 933. Gideon, of course, held that it was error to deny a defendant his right to defense counsel under certain circumstances. Geders held that it was reversible error to deprive a defendant access to counsel during an overnight recess when the defendant was scheduled to be cross-examined the following day. The Court in Geders did not attempt to define structural error or even discuss whether the error was harmless in nature. 425 U.S. at 88-91, 96 S.Ct. 1330. The Gideon *125 court concluded that the Sixth Amendment stands as a constant admonition that, if the constitutional safeguards it provides are lost, justice will not still be done and that the right to counsel involved a procedural and substantive safeguard designed to assure fair trials before impartial tribunals. 372 U.S. at 342-44, 83 S.Ct. 792.
¶ 33 The Supreme Court used a different concept in Waller, 467 U.S. at 49-50 n. 9, 104 S.Ct. 2210. There, the Court held that the denial of the defendant's right to a public hearing was reversible error regardless of the showing of any prejudice. The Supreme Court agreed with the view that a requirement to show prejudice would in most cases deprive the defendant of the guarantee of a public trial because it would be difficult to envision a case in which such error caused prejudice. Id. The Court cited with approval cases holding that while the benefit of a public trial is intangible and difficult to prove, the framers thought it was real. Id. Because demonstration of prejudice in this kind of case is practically impossible to prove, prejudice must be implied. Id.[4] Despite the more recent formulations of structural error, no court has suggested that Waller-type error is not structural error. Indeed, both our Supreme Court and the Ninth Circuit have expressly reaffirmed that denial of a public hearing is structural error. Ring III, 204 Ariz. at 553 n. 16, 65 P.3d at 934; Summerlin, 341 F.3d at 1118 n. 20.
¶ 34 The Supreme Court used yet another concept in Vasquez v. Hillery, 474 U.S. 254, 263, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986), holding that exclusion of jurors of the defendant's race from the grand jury was structural error. The Court stated that when the constitutional violation calls into question the objectivity of those charged with bringing the defendant to justice, a court can neither indulge in a presumption of regularity nor can it evaluate resulting harm. Compare Nguyen, 539 U.S. at 79-82, 123 S.Ct. at 2136-38 (judgments rendered by a federal appellate court panel on which a non-Article III judge served were impermissible because the validity of the body was fundamentally flawed and incurable; decision had to be vacated without any need to assess prejudice); Sullivan v. Louisiana, 508 U.S. 275, 277-79, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) (deficient reasonable-doubt instruction was structural error because the defective instruction vitiated all of the jury's findings and a reviewing court could only engage in pure speculation of what a reasonable jury would have done).
¶ 35 Despite the above rulings, in different contexts both the United States Supreme Court and our supreme court have used stricter definitions to characterize error as either trial or structural. See Neder, 527 U.S. at 8-9, 119 S.Ct. 1827 (structural error: (1) contains a defect affecting framework within which trial process occurs; (2) infects entire trial process; and (3) renders trial fundamentally unfair while also depriving defendant of basic protection without which a criminal trial cannot reliably serve as a vehicle for determination of guilt or innocence); Fulminante, 499 U.S. at 307-10, 111 S.Ct. 1246 (trial error can be quantifiably assessed in context of other evidence to determine if admission of evidence was harmless; to be structural, error must affect the framework within which a trial proceeds, rather than an error in trial process); Hickman, 205 Ariz. at 199, ¶ 30, 68 P.3d at 425 (structural error is (1) that kind of error that will likely affect reliability of truth-finding process and (2) the impact on the truth-finding process is incapable of rational assessment; latter prong does not come into play if first prong is not met).
¶ 36 Because of the partially overlapping definitions, a court will obtain different results depending on which test is used. For example, if a court applied the test in Hickman that the error will likely affect the reliability of the truth-finding process, neither the right to a public trial as in Waller nor the erroneous exclusion of members of the defendant's race from a grand jury as in Vasquez would merit structural error status. Neither the presence of the public at a trial nor the race of a grand juror should have any *126 impact on the reliability of the truth-finding function of the trial process. Nor would the right to have access to defense counsel during an overnight recess meet that stringent test. Geders, 425 U.S. at 88-91, 96 S.Ct. 1330. Similarly, these same rights would not meet the element for structural error that the error pervade the trial process from beginning to end. Neder, 527 U.S. at 8-9, 119 S.Ct. 1827.
¶ 37 This same conflicting result occurs here. If we were to apply a test that the error must permeate the entire trial from start to finish and affect the truth-finding process, then the return of a verdict on guilt or innocence in defendant's absence could not be structural error. In contrast, if we used the concepts from Waller, that the constitutional framers recognized the importance of the right to be present and it would be impossible to determine if there was prejudice, then erroneously permitting the verdict to be returned in defendant's absence would be structural error.
The Supplemental Test for Structural Error
¶ 38 This is neither the case nor the forum to attempt to resolve the above conundrum. While we are bound by our supreme court's determinations of structural error, that should not prevent this Court from attempting to formulate a supplemental test for structural error where neither our supreme court nor the United States Supreme Court has applied its tests to the issue presented by this case.
¶ 39 If application of the more stringent tests do not conclude the error is structural, I would find that the error would still be structural if: (1) it deprives a defendant of a fundamental constitutional right traditionally attached to a criminal proceeding; (2) such deprivation would undermine the public's confidence in the fairness of that process; and (3) there is no effective means to quantify or determine the effect that error had on the ultimate decision in the case.
¶ 40 The benefits of this test are at least three-fold. First, it is only to be used in the small number of cases affecting a traditional constitutional right where the more stringent tests would not classify the error as structural. Thus, it does not conflict with tests used by either the United States Supreme Court or our supreme court, but acts only as a "safety net" for erroneous deprivations of more traditional constitutional rights.
¶ 41 Second, it would help to avoid the conundrum recognized by Justice White's dissent in Fulminante that certain errors which are indisputably structural, such as the right to a public trial, would still be structural even though they could not meet the more recent, stringent tests for structural error. Thus, under the supplemental test, the erroneous denial of a public trial, wrongful exclusion of members of the defendant's race from the grand jury and wrongful denial of access to defense counsel during a recess would all still be structural error without affecting the more traditional tests.
¶ 42 Third, the supplemental test meets most of the elements of the more stringent tests for structural error. If the error is not simply in the presentation of the case to the jury (which might be quantifiable), but rather is in the structure of the trial itself, it would meet the supplemental test as well as one of the elements of the Fulminante test. Similarly, both the alternative and almost all the traditional tests require that an appellate court cannot quantify the effect of the error on the jury's decision. See Neder, 527 U.S. at 11-12, 119 S.Ct. 1827; Summerlin, 341 F.3d at 1118-19; Hickman, 205 Ariz. at 199, ¶¶ 30-31, 68 P.3d at 425; Ring III, 204 Ariz. at 552, ¶ 45, 65 P.3d at 933. Moreover, the supplemental test has the same requirement as the more traditional test that the error seriously affect the public reputation of the criminal proceeding. Neder, 527 U.S. at 9, 119 S.Ct. 1827.
¶ 43 The only two elements which some of the more stringent tests include and which could be considered omitted from the supplemental test are that the error pervade the entire trial and that it affect the truth-finding function of the jury. However, the supplemental test's requirement that the error affect a traditional constitutional right the deprivation of which would undermine the public's confidence in the fairness of the trial *127 meets the same objective as the possible effect on the truthfinding processthat we can confidently state the trial was fundamentally fair.
¶ 44 In addition to the benefits of the supplemental test, it is not dissimilar from the factors the Supreme Court cited with approval in Waller. There, the Court agreed with the view that structural error was present where a right was violated, and the benefit of a right was intangible and difficult to prove, but the framers thought it was real and demonstration of prejudice would be practically impossible to show. Waller, 467 U.S. at 49-50 n. 9, 104 S.Ct. 2210.
Application to a Verdict in Absentia
1. The Right to be Present for the Return of the Verdict is a Traditional Constitutional Right.
¶ 45 The right to be present when the jury returns a verdict of guilt or innocence is constitutional in nature and has a long tradition in our idea of a fundamentally fair trial. Frank v. Mangum, 237 U.S. 309, 35 S.Ct. 582, 59 L.Ed. 969 (1915) (discussing prior cases holding return of verdict in absentia is void verdict, but holding due process did not prevent states from allowing defendant to waive right to be present); Diaz v. United States, 223 U.S. 442, 453, 32 S.Ct. 250, 56 L.Ed. 500 (1912); Larson, 911 F.2d at 395-96 (defendant has constitutional right to be present on return of verdict); Lee, 509 P.2d at 1094. See also Annotation, Absence of Accused at Return of Verdict in Felony Cases, 23 A.L.R.2d 456, §§ 2-3, 11 (1952) (collecting cases discussing right of defendant to be present at return of verdict and verdict is void if defendant is involuntarily absent); 5 Wayne R. LaFave, Criminal Procedure § 24.2(a)(2d ed. 1999) (LaFave) (discussing constitutional and due process bases for presence at trial, including at return of felony verdict).[5]
¶ 46 While the majority of the en banc decision in Rice questioned this notion, Justice Jones, speaking for our unanimous supreme court has affirmed the constitutional right of the defendant in a felony case to be present when the jury returns its verdict of guilt or innocence, effectively rejecting the Ninth Circuit's questioning of this principle. Levato, 186 Ariz. at 443-44, 924 P.2d at 447-48 ("[w]e conclude, under the Sixth and Fourteenth Amendments to the United States Constitution, and article II, sections 4 and 24 of the Arizona Constitution, that criminal defendants, under all but exceptional circumstances, are entitled as a matter of constitutional right to be physically present for the return of jury verdicts.").
2. Erroneously Permitting a Verdict to be Returned in Absentia Undermines Public Confidence in the Proceeding.
¶ 47 The deprivation of the right to be present when guilt or innocence is determined brings into question the public's confidence in a fair trial. As the five dissenting judges in Rice pointed out, a fundamental tenet of our criminal justice system is to have both the jurors and the defendant face each other in a moment of truth when the verdict is returned. 77 F.3d at 1146-47. Accord Larson, 911 F.2d at 395-96; Lee, 509 P.2d at 1094. That aspect of the jury trial is the very meaning of a trial by one's peers. The same conclusion that has been reached as to the defendant's presence when being sentenced also applies to the defendant's presence when a verdict of guilt or innocence is announced:
[T]here is an additional and perhaps more fundamental justification for the right to be personally present [at sentencing]. Respect for the dignity of the individual is at the base of the right of a man to be present when society authoritatively proceeds to decide and announce whether it will deprive him of life or how and to what *128 extent it will deprive him of liberty. It shows a lack of fundamental respect for the dignity of a man to sentence him in absentia.
Note, Procedural Due Process of Judicial Sentencing for Felony, 81 Harv.L.Rev. 821, 831 (1988).
¶ 48 We have already been told that at least at sentencing there is not structural error if there is no jury. Ring III. Can we also say that our fundamental belief in the fairness of a trial would continue if we do not need the defendant at the return of the verdict? I would hold that the erroneous absence of the defendant would undermine the public's belief in the fundamental fairness of our criminal trial process.
3. There is no Rational Way to Determine the Effect of the Error.
¶ 49 Application of the third part of the proposed test, whether the error is harmless, is relatively straightforward. Just as with the right to a public criminal trial in Waller, there is no way for a court to determine the effect of the error. Unlike mere error in the presentation of the case to the jury, where the effect of the error can often be quantified, there is no way to determine what each juror would have done if the defendant had been present when it returned its verdict. Larson, 911 F.2d at 395-96; Lee, 509 P.2d at 1094.[6] It is impossible for the court to later bring back that same jury, with the defendant in the courtroom, and ask the jury to state in front of the defendant whether it had any doubts. Nor is it permissible for a court to permit a party to impeach the jury's verdict by asking each juror whether the presence of the defendant at the rendering of the verdict might have caused some doubt. Ariz. R.Crim. P. 24.1(d); State v. Spears, 184 Ariz. 277, 288, 908 P.2d 1062, 1073 (1996).
¶ 50 More critically, if we determine that the error here is subject to harmless error analysis, it will be practically impossible to determine whether the presence of the defendant might have caused some doubt in one juror's mind. For almost all cases, just as with the right to a public trial, that analysis would render the constitutional right to be present at the return of the verdict meaningless. Waller, 467 U.S. at 49, 104 S.Ct. 2210. Compare Snyder v. Massachusetts, 291 U.S. 97, 108-16, 54 S.Ct. 330, 78 L.Ed. 674 (1934) (it is permissible to exclude the defendant from jury's viewing of crime scene where any error occurring at viewing could be corrected later by trial court). See also 5 LaFave, § 24.2(a) (harmless error applied where case proceeded in defendant's absence when there was clear lack of prejudice).
¶ 51 As applied to this case, this part of the supplemental test is very important. Here, the jury deliberated for approximately thirty minutes. The defense was based on the defendant's own testimony that the defendant had purchased the property from someone else. Thus, the jury apparently disbelieved the defendant after only thirty minutes of deliberation. Could one juror, after thirty minutes of deliberation, have some doubt if he or she had to look the defendant in the eye and say that juror voted to convict? Certainly, courts have found that is possible. Larson, 911 F.2d at 395-96 (absence at return of verdict is significant because, when combined with individual polling of jury, it has psychological effect by requiring each juror to assume the burden of his decision and affirm it in the defendant's presence; error required reversal because court could not gauge effect of defendant's absence on *129 return of verdict); Lee, 509 P.2d at 1094. Compare Estate of Reinen, 198 Ariz. at 290, ¶ 25, 9 P.3d at 321 ("`[U]ntil they return the verdict, the jury may decide again and again to reconsider one or all the issues in the case... Consequently, we do not and cannot know or assume that at any point in the deliberations, a majority of the jury unalterably concluded that Defendants were liable....'" quoting Perkins, 172 Ariz. at 119, 834 P.2d at 1264).
¶ 52 For the reasons stated above, I conclude that the error here was structural in nature and the judgment needs to be reversed and remanded for a new trial.
The Dissent
¶ 53 The dissent takes a narrower view of what this Court can do with the issue presented. It holds that we are bound by the definition of structural error set forth in Ring III and concludes erroneously receiving a verdict in absentia could not be structural error. I think the dissent errs in four ways on the structural error issue.
¶ 54 First, the dissent states that the concurrence in effect departs from the law enunciated by our supreme court in Ring III. I respectfully disagree with that conclusion. As I have explained, various courts, including the United States Supreme Court, have utilized various tests for structural error. Thus, if we applied the test enunciated in Waller as opposed to the test found in such cases as Ring III and Hickman, erroneously receiving the verdict in absentia would be structural. The dissent fails to explain how courts have enunciated this stricter test for structural error and in the same opinions continued to cite to the facts in Waller as constituting structural error. Moreover, the dissent overlooks that the test I have proposed is a supplemental test, a safety-net, which would be applied only after applying the Ring III test.
¶ 55 Second, our supreme court has never applied a structural error test to the issue of erroneously receiving a verdict in absentia. Levato, 186 Ariz. at 444 n. 2, 924 P.2d at 448 (holding that issue need not be addressed). The dissent points to no authority that this Court cannot develop a supplemental test for structural error which could be applied to a factual scenario that neither the United States Supreme Court nor our supreme court has addressed.
¶ 56 Third, the dissent states that the concurrence would promote disrespect for the judicial system by expanding structural error and requiring automatic reversal even where the error may be immaterial to a finding of guilt or innocence. By its own terms, the supplemental test applies only where the erroneous deprivation of a fundamental constitutional right traditionally attached to a criminal trial would undermine the public's confidence in the fairness of that process and a court cannot determine the effect the error had on the verdict. As such, the test does not require reversal for harmless error. If an appellate court cannot determine that a jury would not have reached the same decision, then reversal is required. As explained above, a number of courts have held that the presence of the defendant at the return of the verdict of guilt or innocence can possibly effect the ultimate decision in the case. Thus, by its own terms, the supplemental test applies only to situations which may be material to the ultimate finding of guilt or innocence.
¶ 57 Finally, the dissent assumes that the presence of the defendant at the return of the verdict can have no effect on any juror's decision in any case and posits that unlike the absence of the defendant in other dealings with the jury, absentia here cannot ever be prejudicial. See State v. Garcia-Contreras, 191 Ariz. 144, 148-49, ¶¶ 17-22, 953 P.2d 536, 540-41 (1998) (absence of defendant in selecting jury is structural error); Dann, 205 Ariz. at 575, ¶ 72, 74 P.3d at 249 (emphasizing importance of having defendant present in matters dealing with the jury). The dissent cites no authority for its conclusion that absentia can have no effect on any juror during the return of the verdict. As both the opinion and my concurrence point out, there is simply no way to ever test that conclusion. I think it is erroneous to assume the presence of the defendant at the return of the verdict can never have any effect on any single juror's vote. Until the verdict is announced and each juror polled, in the presence *130 of the defendant, there is no determination of guilt. I would rather err on the side of ensuring that the defendant is allowed to be present, if he or she has not waived that right, rather than to take the chance with a defendant's liberty that the defendant's absence might have had some effect on one or more jurors.
WEISBERG, Judge, dissenting.
¶ 58 I conclude that defendant's involuntary absence during the announcement of the jury's verdict and the polling of individual jurors violated Arizona Rule of Criminal Procedure 19.2 and the Sixth and Fourteenth Amendments to the United States Constitution.[7] However, I respectfully dissent from the majority's conclusion that the violation of Rule 19.2, without a showing of prejudice, requires the automatic reversal of defendant's conviction. I also disagree with the concurrence's conclusion that defendant's absence constituted structural error. Instead, I conclude that defendant's involuntary absence constituted trial error that, beyond a reasonable doubt, did not prejudice the fundamental fairness of the trial. I would therefore affirm the conviction.
A. The Majority
¶ 59 The majority accepts the trial/structural error dichotomy applied by our supreme court in Ring III, 204 Ariz. 534, 65 P.3d 915 (2003), and finds, as do I, that the error here was "trial error." But because it reasons that the specific error here will always be harmless, in order to preserve Rule 19.2's effectiveness the majority declines to apply a harmless error analysis. Infra at ¶ 12. In doing so, the majority fails to follow the dictates of State v. Hickman, 205 Ariz. 192, 68 P.3d 418 (2003), as to when an alleged constitutional error is amenable to harmless error analysis.
¶ 60 In Hickman, the Arizona Supreme Court articulated a two-pronged test.[8] First, is the error one that "will likely affect the reliability of the truth-finding process"? Second, is the error's impact on the truth-finding process capable of "rational assessment"? Id. at 199, ¶ 30, 68 P.3d at 425. The court further directed that if the error did not diminish the reliability of the truth-finding, the second consideration would be irrelevant.[9]Id. As required, I apply the Hickman test to the instant case.
¶ 61 Here, our supreme court has already answered the first question. In State v. Levato, the court determined that a defendant's involuntary absence from the return of the verdict after he had been "present during all portions of the trial that might have had a substantial influence on the verdict, including jury selection, opening arguments, the presentation of evidence, closing arguments, and jury instructions" did not have a substantial impact on the truth-finding process. 186 Ariz. 441, 445, 924 P.2d 445, 449 (1996) (emphasis added). For the same reasons, this defendant's absence neither infected the entire trial from beginning to end nor corrupted the trial's essential framework.
¶ 62 In fact, the error could not have tainted in any way the process of ascertaining innocence or guilt. When the jury returned its verdict and was polled, the decision-making process was over. The jury's only remaining duty was to publicly announce its unanimous decision already reached during private deliberations. Defendant's absence from the courtroom during this final ministerial act could neither impair nor impact the truth-finding process because, at that stage, defendant would have been a mere observer. *131 His opportunity to meaningfully participate or to influence the jury through argument, testimony, or evidence had ended. Unlike other sorts of errors that can inflict definite, albeit unquantifiable, prejudice, here no witness blurted out pejorative information; no improper arguments were made; no irrelevant or unfairly damaging evidence was admitted. In fact, the only conceivable way in which this error might undercut the verdict's validity would be if a juror, upon seeing defendant in the courtroom and being polled, recanted. The implausibility of a juror repudiating his or her vote at the eleventh hour does not justify the extreme and disproportionate remedy of a new trial particularly when, as here, the evidence of guilt was overwhelming.
¶ 63 Furthermore, as our supreme court noted in Hickman, our constitution provides that "[n]o cause shall be reversed for technical error in pleadings or proceedings when upon the whole case it shall appear that substantial justice has been done." Ariz. Const. art. 6, § 27. And, by statute, "[n]either a departure from the form or mode prescribed in respect to any pleadings or proceedings, nor an error or mistake therein, shall render the pleading or proceeding invalid, unless it actually has prejudiced ... the defendant in respect to a substantial right." Ariz.Rev.Stat. § 13-3987 (2001). Moreover, ordering a new trial when an error has had no impact on the verdict's reliability inflicts needless costs on the victims and the administration of justice. Hickman, 205 Ariz. at 200, ¶¶ 35-36, 68 P.3d at 426.
¶ 64 Because neither defendant, the majority, nor the concurrence has articulated any harm to the truth-finding process, I conclude that the violation of Rule 19.2 was harmless beyond a reasonable doubt.
B. The Concurrence
¶ 65 Although my concurring colleague concedes that no prejudice has been shown here, he uses the inability to quantify even the slightest harm as the basis for finding structural error. This approach, however, is contrary to the clear directives of both the United States and Arizona Supreme Courts.
¶ 66 The United States Supreme Court has defined structural error as error that permeates "[t]he entire conduct of the trial from beginning to end" or that "affects the framework within which the trial proceeds, rather than simply an error in the trial process itself." Arizona v. Fulminante, 499 U.S. 279, 309-10, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). Such errors, however, are "the exception and not the rule." Rose v. Clark, 478 U.S. 570, 578, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986), overruled in part on other grounds, Brecht v. Abrahamson, 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). If an accused was represented by counsel and was tried by an impartial judge, "there is a strong presumption that any other errors that may have occurred are subject to harmless error analysis." Id. at 579, 106 S.Ct. 3101.
¶ 67 Given the extraordinary and even draconian consequences that apply when structural error is found, both the United States and Arizona Supreme Courts have limited its application to situations that demonstrate manifest harm to or distortion of the truth-finding process. See cases cited infra, n. 3; State v. Garcia-Contreras, 191 Ariz. 144, 146, ¶ 8, 953 P.2d 536, 538 (1998) (structural error to deny continuance of jury selection when defendant thus declined to appear in jail attire); State v. Ayers, 133 Ariz. 570, 571, 653 P.2d 27, 28 (App.1982) (defendant's absence from all of jury selection process is reversible error). As Justice Rehnquist stated in Fulminante, a trial error may be "devastating. . . but this simply means that a reviewing court will conclude in such a case that ... [the error] was not harmless error; it is not a reason for eschewing the harmless error test entirely." 499 U.S. at 312, 111 S.Ct. 1246.
¶ 68 The Supreme Court's restrained view has led it to denominate very few constitutional violations as structural.[10] Instead, *132 most defects that occur during criminal proceedings, including those of constitutional proportions, are treated as trial error.[11] Thus, even such deprivations as a defendant's right to be present at all critical trial stages and of his right to counsel are, "as with most constitutional rights, [] subject to harmless error analysis unless the deprivation, by its very nature, cannot be harmless." Rushen v. Spain, 464 U.S. 114, 117 n. 2, 104 S.Ct. 453, 78 L.Ed.2d 267 (1983)[12] (citations omitted) (emphasis added). (Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963)),[13] of course, is an example of the latter circumstance. (emphasis added). Similarly, here, even while agreeing that defendant's absence violated his federal constitutional rights, I cannot agree that this error, by its very nature, demands the reversal of his conviction following an indisputably fair trial.
¶ 69 Clearly, the automatic reversal of a conviction for an error during trial must be reserved for those egregious wrongs that undermine confidence in the criminal justice system's essential fairness. Ruling otherwise imposes reversal without reason, which violates our Arizona constitutional duty not to reverse "for technical error in pleadings or proceedings when upon the whole case it *133 shall appear that substantial justice has been done". Ariz. Const. art. 6, § 27; Ring III, 204 Ariz. at 563, ¶ 96, 65 P.3d at 944 ("If error is harmless, in these or other cases, substantial justice has been done."); Hickman, 205 Ariz. at 199-200, ¶ 32, 68 P.3d at 425-26.
¶ 70 The concurrence, rather than considering violations of constitutional rights violations on a continuum ranging from certainly harmless to certainly harmful, imposes reversal, the ultimate sanction, upon an error that carried with it no demonstrable prejudice. Doing so neither strengthens the right of confrontation nor advances "fundamental human rights of life and liberty." Rather, it requires the repetition of a process that was fundamentally fair. Moreover, granting a new trial in the face of overwhelming guilt and without a showing of prejudice fosters cynicism and disrespect for the criminal justice system. See Hickman, 205 Ariz. at 200, ¶ 35, 68 P.3d at 426 (to force retrials after a trial by a fair jury fosters cynicism and disrespect for justice system).
¶ 71 Next, the concurrence unconvincingly relies upon the concept of "essential right," infra. at ¶ 20, to bolster its position. First, heretofore, the "essential right" concept has been applied only in the civil arena, as opposed to the criminal, and the concurrence has cited only civil cases to support its position. Second, even in the civil arena, the "essential right" approach has been applied only to egregious errors that clearly could have influenced the jury's verdict and thus called into question the fairness of the decision-making process.
¶ 72 To illustrate using the concurrence's civil examples, in Perez, the bailiff gave the jury inaccurate information about access to testimony, the procedure upon deadlock, and the impact of a verdict on a nonparty at fault. 187 Ariz. at 357, 929 P.2d at 1305. Neither the parties nor court were informed of this communication. Id. The court cited Perkins v. Komarnyckyj, 172 Ariz. 115, 834 P.2d 1260 (1992), and held that the improper communications denied the litigant essential rights to a jury "free from unauthorized intrusion" and "from extraneous and inaccurate information," and to be notified of problems during deliberations. 187 Ariz. at 361, 929 P.2d at 1307. In Reinen, incorrect jury instructions usurped the jury's role as the arbiter of issues of assumption of the risk and in violation of our constitution. 198 Ariz. at 290, 9 P.3d at 321. In Perkins, the judge's ex parte communication to the jury and the imparting of legally incorrect information about which jurors should deliberate on damages required a new trial. 172 Ariz. at 116, 119, 834 P.2d at 1261, 1264. In all of these cases, clear legal error was injected into and tainted the jury's deliberative processes and hence the integrity of the verdicts.
¶ 73 Here, the jury had reached its verdict and was merely asked to affirm it in open court. The defendant's absence did not and could not taint the already concluded deliberations.[14]
¶ 74 Finally, although the concurrence appears to agree that the majority "correctly" cites Ring III for the meaning of structural error, he reasons that, because other courts have adopted differing definitions, this court should endorse yet another definition. This suggestion overlooks that we cannot depart from the law enunciated by our supreme court. It is the final arbiter, and we are not free to improvise. See State v. Foster, 199 Ariz. 39, 41 n. 1, 13 P.3d 781, 783 n. 1 (App.2000).
¶ 75 Thus, the concurrence's attempt to redefine structural error departs from the clear guidance provided by our supreme court in Ring III and Hickman as well as that court's reliance on United States Supreme Court precedent. In Ring III, the violation of the Sixth Amendment right to have a jury impose the death sentence in thirty-one cases was not deemed to be structural error. 204 Ariz. at 552, ¶ 44, 65 P.3d at 933 (citing Neder v. United States, 527 U.S. 1, 8, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999), and Fulminante, 499 U.S. at 306-07, 111 S.Ct. 1246). The court noted the relative paucity of errors deemed structural, id. at ¶ 46, and determined that the error had not rendered the *134 defendants' trials fundamentally unfair or unreliable, nor had it infected the integrity of the trials from beginning to end. Id. at 554, ¶ 50, 65 P.3d at 935.
¶ 76 Similarly, in explaining the expansive role of harmless error, and the limited role of structural error, the United States Supreme Court observed that harmless error "is essential to preserve the `principle that the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence, and promotes public respect for the criminal process by focusing on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error.'" Fulminante, 499 U.S. at 308, 111 S.Ct. 1246 (quoting Van Arsdall, 475 U.S. at 681, 106 S.Ct. 1431). My concurring colleague's expanded application of structural error runs afoul of this admonition. It would redress no demonstrable harm, and yet by elevating form over substance, would promote disrespect for our judicial system.
CONCLUSION
¶ 77 Because there was neither prejudice to defendant nor unfairness in the trial process, I would follow our supreme court's lead in Ring III and conclude that the subject error was trial error. Having concluded that such trial error was harmless, I would affirm the conviction.
NOTES
[1] In a perfect world, we would order the trial court to reconvene the jury and pronounce the verdict with the defendant present. This would be the most appropriate remedy. See Waller v. Georgia, 467 U.S. 39, 48-50, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984) (holding that the defendant was improperly denied a public suppression hearing, remanding for a public suppression hearing, and ordering that the validity of the defendant's conviction be contingent upon the outcome of the public suppression hearing). Unfortunately, with time memories fade and people move. Moreover, the admonition has been lifted and the jurors certainly have become tainted.
[2] Indeed, the facts in Lee concerning the denial of the defendant's right to be present for the return of the verdict are somewhat similar to those presented here. 509 P.2d at 1089-90.
[3] The Ninth Circuit's decision in Summerlin does not overrule Ring III, but is binding in Summerlin's case. While state courts are bound by United States Supreme Court interpretations of federal statutes and the federal constitution, the interpretation of a federal constitutional question by a lower federal court usually serves as persuasive authority, not binding precedent. State v. Gates, 118 Ariz. 357, 359, 576 P.2d 1357, 1359 (1978). Cf. State v. Nordstrom, 206 Ariz. 242, 244 n. 2, 77 P.3d 40, 42 (2003)(holding Arizona courts are not bound by Summerlin). I cite Summerlin not as overruling Ring III, but to show the conundrum in trying to determine structural error without a unifying principle consistently applicable to all cases.
[4] The Court in Waller did not remand for a new trial because the closed hearing was a suppression hearing. Rather, it remanded to permit the suppression hearing to be held in public. As the opinion here explains, a limited remand to permit the defendant to be present and have the jury again return its verdict is impractical.
[5] In dictum in Rose v. Clark, 478 U.S. 570, 576, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986), the United States Supreme Court cited to Rushen v. Spain, 464 U.S. 114, 104 S.Ct. 453, 78 L.Ed.2d 267 (1983) for the principle that erroneously denying the defendant his right to be present during a jury trial was subject to harmless error analysis. Rushen had nothing to do with a jury verdict being returned in absentia. Rather, it concerned only whether the defendant had a right to be informed of and be present at an innocuous ex parte communication between a juror and the trial judge. 464 U.S. at 117-19, 104 S.Ct. 453.
[6] While Judge Kozinski has posited that empirical evidence shows that a single juror, after looking the defendant in the eye, would in most circumstances not change his mind or have any doubts, he does not point to any such evidence supporting that conclusion. Rice, 77 F.3d at 1143 n. 6. The cases to which Judge Kozinski cites do not deal with the absence of the defendant from the return of the verdict and merely suppose that any chance of a juror changing his mind are remote.

Indeed, if the chance of such a change were so minuscule, the requirement that the jury be polled would appear to be of little use. Presumably a juror would object without being polled if he or she believed the jury foreperson had misstated the decision of the jury. Ariz. R.Crim. P. 23.4 (requiring jury to be polled); Audette v. Isaksen Fishing Corp., 789 F.2d 956, 958-59 (1st Cir. 1986)(citing cases to effect that polling of jury is of ancient origin, to ensure verdict was unanimous, was reached without coercion and to allow juror to change his or her mind).
[7] See State v. Levato, 186 Ariz. 441, 443, 445, 924 P.2d 445, 447, 449 (1996) (although constitutional right to be present was infringed, and defense counsel declined to waive defendant's presence, trial court's acceding to defense counsel's request that return of verdict and polling occur during defendant's absence was trial strategy that did not merit a reversal of the verdict).
[8] Hickman rejected the automatic reversal rule previously adopted to cure an erroneous denial of a defendant's challenge for cause that necessitated use of a peremptory strike. 205 Ariz. at 194, ¶ 6, 68 P.3d at 420. Instead, it held that even "important constitutional errors" are reviewed for harmless error. Id. at 198, ¶ 29, 68 P.3d at 424.
[9] As was the case with the peremptory challenges considered in Hickman, the majority here fails to suggest why the infringement of a procedural rule commands greater protection than the violation of a constitutional right.
[10] In criminal cases, trial by a biased judge (Tumey v. Ohio, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927)); total denial of defense counsel (Gideon v. Wainwright, 372 U.S. 335, 344-45, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963)); denial of right to self-representation (McKaskle v. Wiggins, 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984)); denial of access to counsel during overnight recess; (Geders v. United States, 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976)); defective reasonable doubt instructions (Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993)); exclusion of jurors of defendant's race (Vasquez v. Hillery, 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986)); excusing a juror for views on capital punishment (Gray v. Mississippi, 481 U.S. 648, 107 S.Ct. 2045, 95 L.Ed.2d 622 (1987)), and denial of public criminal trial (Waller v. Georgia, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984)), have been found to be structural errors. Cited in Ring III, 204 Ariz. at 552, ¶ 46, and n. 9-16, 65 P.3d at 933-34 and n. 9-16.
[11] The Fulminante majority recounted sixteen instances in which that Court had applied harmless error analysis to various depravations of constitutional rights. 499 U.S. at 306-07, 111 S.Ct. 1246. See, e.g., Clemons v. Mississippi, 494 U.S. 738, 752-54, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990) (unconstitutionally overbroad jury instructions at sentencing in capital case); Carella v. California, 491 U.S. 263, 266, 109 S.Ct. 2419, 105 L.Ed.2d 218 (1989) (jury instruction containing erroneous conclusive presumption); Satterwhite v. Texas, 486 U.S. 249, 257-58, 108 S.Ct. 1792, 100 L.Ed.2d 284 (1988) (admission of evidence at sentencing in capital case in violation of Sixth Amendment); Pope v. Illinois, 481 U.S. 497, 501-04, 107 S.Ct. 1918, 95 L.Ed.2d 439 (1987) (jury instruction misstating element of offense); Rose v. Clark, 478 U.S. 570, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986) (jury instruction containing erroneous rebuttable presumption); Crane v. Kentucky, 476 U.S. 683, 691, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986) (erroneous exclusion of defendant's testimony of circumstances surrounding his confession); Delaware v. Van Arsdall, 475 U.S. 673, 683, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986) (restriction on defendant's right to cross-examine a witness for bias in violation of confrontation clause); Rushen v. Spain, 464 U.S. 114, 117-19 and n. 2, 104 S.Ct. 453, 78 L.Ed.2d 267 (1983) (denial of defendant's right to be present at trial); United States v. Hasting, 461 U.S. 499, 508-09, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983) (comment on defendant's failure to testify in violation of Fifth Amendment); Hopper v. Evans, 456 U.S. 605, 613-14, 102 S.Ct. 2049, 72 L.Ed.2d 367 (1982) (statute improperly forbidding jury instruction on lesser-included offense in capital case in violation of due process clause); Kentucky v. Whorton, 441 U.S. 786, 789-90, 99 S.Ct. 2088, 60 L.Ed.2d 640 (1979) (failure to instruct jury on presumption of innocence); Moore v. Illinois, 434 U.S. 220, 232, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977) (admission of identification evidence in violation of Sixth Amendment); Brown v. United States, 411 U.S. 223, 231-32, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973) (admission of out-of-court statement by nontestifying codefendant in violation of Sixth Amendment); Milton v. Wainwright, 407 U.S. 371, 372-73, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972) (admission of confession obtained in violation of Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964)); Chambers v. Maroney, 399 U.S. 42, 52-53, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970) (admission of evidence obtained in violation of Fourth Amendment); Coleman v. Alabama, 399 U.S. 1, 10-11, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970) (denial of counsel at preliminary hearing in violation of Sixth Amendment).
[12] In Rushen, the trial judge and a juror engaged in two unrecorded ex parte communications during trial that came to light after the defendant's conviction. He asserted violations of his right to be present at all critical trial stages and his right to counsel. The Court nonetheless found the error harmless beyond a reasonable doubt. 464 U.S. at 121, 104 S.Ct. 453.
[13] Gideon held that an indigent defendant's conviction, obtained after he had been denied counsel, violated his Sixth Amendment and fundamental rights to counsel. Assistance of counsel was a safeguard "necessary to insure fundamental human rights of life and liberty." Id. at 343, 83 S.Ct. 792 (quoting Johnson v. Zerbst, 304 U.S. 458, 462, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)).
[14] I note that neither the concurrence nor defendant is able to cite a single case in which harm was shown to arise out of a defendant's absence at the reading of the verdict.