9 P.3d 314

**ESTATE OF Jared M. REINEN, Plaintiff–Appellant.**

v.

**NORTHERN ARIZONA ORTHOPEDICS, LTD., an Arizona corporation; Michael Abeshaus, M.D. and Michelle Ann Abeshaus, husband and wife; John W. Durham, M.D. and Lisa A. Jobin, husband and wife; Merrill M. Abeshaus,**

M.D. and Rhoda Mae Abeshaus, husband and wife; Roman Lewicky, M.D. and Juanita T. Lewicky, husband and wife; Flagstaff Medical Center, Inc., an Arizona corporation; Thomas S. Henry, II, M.D., P.C., Henry, II, M.D. and Sheila W. Henry, husband and wife, Defendants-Appellees.

No. CV–98–0411–PR.

Supreme Court of Arizona,
En Banc.

Aug. 31, 2000.

Law Offices of Raymond J. Slomski, P.C. by Raymond J. Slomski, James Michael Abernathy and Law Offices of James Bush, P.C. by James McConnell Bush, Phoenix, for Appellant Estate of Jared Reinen.

Teilborg, Sanders & Parks, P.C. by Frank A. Parks, Renee M. Coury, Phoenix, for Appellees Abeshaus, Lewicky and Durham.

Olson, Jantsch, Bakker & Blakey, P.A. by Thomas G. Bakker, Michael L. Barth, Susan J. Woodrow, Phoenix, for Appellees Henry and Thomas S. Henry, II, M.D., P.C.

Goodwin Raup PC by Sharon E. Ravenscroft, Jeffrey J. Campbell, Phoenix, for Appellee Flagstaff Medical Center.

## AMENDED OPINION

ZLAKET, Chief Justice.

¶ 1 Jared Reinen, a 19–year–old Jehovah's Witness, was involved in a rollerblading accident on June 23, 1993. He sustained a broken femur and was taken to the emergency room at Flagstaff Medical Center (FMC), where he was examined by Dr. Michael Abeshaus. After discussing available treatment options, as well as potential complications from both a pre-existing diabetic condition and his refusal to accept blood or blood products, Reinen elected to have corrective surgery. Dr. John Durham, an orthopaedic surgeon, performed the procedure on the evening of Thursday, June 24. During the following weekend, the doctor was unavailable, so Reinen's care was left to the nursing staff and the on-call physicians—Dr. Roman Lewicky, an orthopaedist, and Dr. Thomas Henry, an internist.

¶ 2 Problems ensued during the early morning hours of June 28. At approximately 2:30 a.m., Dr. Lewicky was contacted by Christa Fowler, one of the nurses on duty. The doctor ordered certain tests and instructed Fowler to contact Dr. Henry if the results were abnormal. The testimony conflicts as to whether Dr. Henry was expected to perform a formal consultation or merely to assist in the interim management of the patient. In any event, Dr. Henry gave verbal orders to the nurse upon receiving the test results by telephone. He did not personally examine Mr. Reinen.

¶ 3 The patient's condition became progressively worse over the next several days. He was eventually transferred to St. Joseph's Hospital in Phoenix and remained there for over a month. He was rehospitalized several times during subsequent years until his death in 1998.

¶ 4 Before he died, Reinen sued several of his health care providers, their spouses, and their professional corporations or employers. He alleged, among other things, that Dr. Lewicky violated acceptable standards of medical practice by not calling for a critical care/internal medicine consultation; that Dr. Henry, upon receiving a call in the early morning hours of June 28th, breached appropriate medical standards by failing to examine the patient and/or make sufficient inquiry of the nursing staff; and that, when no physician arrived to examine and treat the patient, Nurse Fowler violated her duty of care by failing to obtain a doctor from the emergency room or elsewhere and by not immediately informing her supervisor of the situation.

¶ 5 At trial, Dr. William O'Riordan testified as the plaintiff's expert witness on post-operative care. No objections to his qualifications were made either prior to or during his appearance on the witness stand. However, following the plaintiff's case, and after O'Riordan had returned to California, Dr. Henry moved for dismissal, arguing that the witness had been incompetent to testify concerning the applicable standard of care. Defendants Lewicky and FMC joined in this motion.

¶ 6 Defense counsel also moved for directed verdicts on the ground that causation evidence was lacking. Dr. Henry had testified during the plaintiff's case that he would not have altered Reinen's course of treatment if called on to do an internal medicine consultation or take over the patient's care. Based on this testimony, the trial court concluded that there could be no proximate cause finding, even assuming the treatment provided by Dr. Lewicky and Nurse Fowler fell below acceptable standards of practice. Thus, it dismissed Lewicky from the case and ruled that FMC could not be held vicariously liable for the acts or omissions of its nurse.

¶ 7 The court further agreed with the challenge to Dr. O'Riordan's qualifications and terminated the case against Dr. Henry, reasoning that in the absence of any admissible expert testimony concerning the applicable standard of care and/or proximate causation,

the plaintiff had failed to carry his burden of proof. The cases against the remaining defendants went to the jury, which returned defense verdicts.

¶ 8 The court of appeals affirmed the trial court proceedings in a memorandum decision, and a petition for review was filed here. Following Reinen's death, his estate was substituted as the plaintiff.

### THE DISMISSAL OF DR. HENRY

■■ ¶ 9 The trial court determined at the close of the plaintiff's case that Dr. O'Riordan was incompetent to testify regarding the standard of care for an internal medicine specialist in Arizona. As stated above, however, no foundational objections were raised either prior to or during O'Riordan's testimony. The defendants chose instead to wait until the close of the plaintiff's evidence to make their challenge. Clearly, this was too late. An objection to proffered testimony must be made either prior to or at the time it is given, and failure to do so constitutes a waiver. This contemporaneous objection rule has been applied by us in numerous contexts. *See, e.g., State v. Detrich,* 188 Ariz. 57, 64, 932 P.2d 1328, 1335 (1997) ("The purpose of a contemporaneous objection requirement is to allow for an immediate remedy for potentially improper or unconstitutional activities."); *State v. Bolton,* 182 Ariz. 290, 306 n. 5, 896 P.2d 830, 846 n. 5 (1995) (regarding witness testimony); *Harrington v. Beauchamp Enters.,* 158 Ariz. 118, 120, 761 P.2d 1022, 1024 (1988) (regarding jury instruction); *State v. Graham,* 97 Ariz. 408, 416, 401 P.2d 141, 147 (1965) (regarding admissibility of evidence). The court of appeals stated in *State v. Swafford* that "if an objection is made at some point in time during the trial where the court may take [appropriate] action . . ., then the objection will be considered timely unless it appears that counsel deliberately bypassed the opportunity to make a timely objection." 21 Ariz.App. 474, 481, 520 P.2d 1151, 1158 (1974). In the case of expert testimony, a contemporaneous objection also affords the party offering the evidence an opportunity to supply any missing foundation. Here, it appears that defense counsel purposely decided as a strate-

gic matter not to object when the witness was being qualified or examined. By failing to complain before or during Dr. O'Riordan's testimony, the defendants waived any legal objection to his qualifications or the foundation for his opinions.

■ ¶ 10 Moreover, because O'Riordan's testimony provided evidence of a breach of the standard of care by Dr. Henry and a causal relationship to Reinen's injuries, the dismissal of Henry from the case was erroneous. Dr. O'Riordan testified, in part, as follows:

Q. If Dr. Henry had done—had arrived, examined and instituted the necessary treatment, ... by the morning of June 28, would Jared have avoided permanent injury?

A. Yes.

Q. Can you give me a percentage for that?

A. [Y]ou're talking about up in the 70 percent area.

Q. You're assuming Dr. Henry arriving to the hospital after he's called by Nurse Fowler?

A. That's correct.

Q. As the standard required?

A. Right.

Dr. Henry's motion should have been denied.

### THE DISMISSAL OF DR. LEWICKY AND DIRECTED VERDICT FOR FMC

¶ 11 The trial judge granted the motions of Dr. Lewicky and FMC because he found insufficient evidence that any act or omission on their part proximately caused Reinen's injuries. This determination was based on the testimony of Dr. Henry, discussed above, that he would not have changed the course of treatment. The defendants argue that this admission, standing alone, absolves them of liability.

■ ¶ 12 As set forth in *Orme School v. Reeves*, however, a directed verdict is appropriate "only when, *without weighing the credibility of the witnesses,* there is [no] difference of opinion over the factual issues in controversy." 166 Ariz. 301, 308–09, 802

P.2d 1000, 1007–08 (1990) (quoting *Galloway v. United States,* 319 U.S. 372, 407, 63 S.Ct. 1077, 1096, 87 L.Ed. 1458 (1943) (Black, J., dissenting)) (emphasis added). "The credibility of a witness' testimony and the weight it should be given are issues particularly within the province of the jury." *Kuhnke v. Textron, Inc.,* 140 Ariz. 587, 591, 684 P.2d 159, 163 (Ariz.Ct.App.1984). The court or jury is not compelled to believe the uncontradicted evidence of an interested party. *See City of Tucson v. Apache Motors,* 74 Ariz. 98, 107, 245 P.2d 255, 261 (1952). Thus, the jurors in this case were entitled to accept or reject Dr. Henry's claim that he would not have changed the course of Reinen's treatment.

¶ 13 Furthermore, the testimony of Dr. O'Riordan was sufficient to create jury questions regarding the actions of Dr. Lewicky and Nurse Fowler, as well as their causal relationship to Reinen's injuries. O'Riordan stated that the applicable standard of care required Dr. Lewicky to request a critical care consult on the morning of Monday, June 28. Trial testimony conflicted regarding the content of communications between Dr. Lewicky, Nurse Fowler, and Dr. Henry. Dr. O'Riordan, however, testified that in his opinion Dr. Lewicky was obligated to personally speak with Dr. Henry about a consult. This, by all accounts, he did not do.

¶ 14 Neither Dr. Henry nor any other critical care specialist examined Reinen. According to Dr. O'Riordan, the standard of care under these circumstances required Christa Fowler either to obtain a doctor who was immediately available, such as an emergency room physician, or to call the nursing supervisor and inform her of the situation. Nurse Fowler did neither.

¶ 15 Finally, as indicated above, Dr. O'Riordan testified that if a critical care, internal medicine, or emergency room doctor had arrived that morning and treated Reinen in accordance with the standard of care, the patient would have had approximately a 70 percent chance of avoiding permanent injury. Thus, because the plaintiff produced evidence without foundational objection regarding the standard of care and the proximate cause of his injuries, and because it was then solely

for the jury to determine the credibility of witnesses, the directed verdicts in favor of Dr. Lewicky and FMC were improper.

## JURY INSTRUCTIONS

¶ 16 An additional challenge raised on appeal involves the propriety of certain jury instructions regarding assumption of the risk. In our original opinion, which has since been recalled, we declined to address this issue. A motion for reconsideration has persuaded us that it is now necessary to consider the instructions in light of jury verdicts rendered in favor of the remaining defendants.

¶ 17 Three instructions regarding assumption of the risk were given, the last two over strenuous objection:

*Jury Instruction 20:*

Defendants claim that plaintiff was at fault by assuming the risk of injury. A person assumes the risk of injury when he has knowledge of a particular risk, appreciates its magnitude, and voluntarily subjects himself to the risk under circumstances that show his willingness to accept that particular risk.

As to this claim, defendant must prove:

(1) Plaintiff assumed a particular risk of injury; and

(2) The particular risk was a cause of plaintiff's injury.

You must decide whether defendant has proved that plaintiff was at fault by assuming the risk of injury and, under all the circumstances of this case, whether any such fault should reduce plaintiff's full damages. These decisions are left to your sole discretion.

If you apply the defense of assumption of risk, the court will later reduce plaintiff's full damages by the percentage of fault you have assigned to the plaintiff.

*Jury Instruction No. 21:*

Mr. Jared Reinen did not voluntarily assume the risk of negligence by the Defendants, *but Mr. Jared Reinen did voluntarily assume the risks relating to the refusal to take or receive transfusions of blood or blood products.*

*Jury Instruction No. 22:*

When a physician's negligent act causes a patient to suffer life-threatening injuries, and the patient exercises his fundamental and religious right to refuse a reasonable life-saving medical procedure, *the patient should bear a proportionate share of liability for the injury to the extent that the patient's injuries were proximately caused by the patient's refusal of the reasonable life-saving treatment* (the taking or receiving of a blood transfusion).

(Emphasis added).

¶ 18 Instructions 21 and 22 were written by the trial judge *sua sponte* after considering similar cases from other jurisdictions. The plaintiff argues that these instructions violated Article XVIII, Section 5 of the Arizona Constitution, and we agree. That constitutional provision requires that "[t]he defense of contributory negligence or of assumption of risk shall, in all cases whatsoever, be a question of fact and shall, at all times, be left to the jury." Thus, the presence or absence of assumption of risk and its effect, if any, on a plaintiff's recovery, are matters exclusively for the jurors to decide. *See Pacific Const. Co. v. Cochran,* 29 Ariz. 554, 558, 243 P. 405, 406 (1926); *Inspiration Consol. Copper Co. v. Conwell,* 21 Ariz. 480, 486–87, 190 P. 88, 90–91 (1920). A jury "is free to find in favor of the plaintiff even though the court ordinarily would find as a matter of law that the plaintiff ... has assumed the risk." *Brannigan v. Raybuck,* 136 Ariz. 513, 518, 667 P.2d 213, 218 (1983).

¶ 19 Defendants argue that the cases reviewed by the trial judge before drafting the instructions are persuasive. *See Corlett v. Caserta,* 204 Ill.App.3d 403, 149 Ill.Dec. 793, 562 N.E.2d 257 (1990); *Shorter v. Drury,* 103 Wash.2d 645, 695 P.2d 116 (1985). However, the jurisdictions from which these decisions come do not have constitutional provisions similar to our Article 18, Section 5, and therefore are not helpful. Although Instruction 20 stated that the jury was to decide, in its "sole discretion," whether the plaintiff assumed the risk of injury and the

effect this should have on his damages, Instruction 21 specifically told the jurors which risks Reinen did and did not assume. That instruction, even when considered with the others, was improper because it compromised the jury's role as sole arbiter of all things relating to assumption of the risk. Under our constitution, a peremptory instruction on the facts, like number 21, is reversible error in the context of contributory negligence or assumption of risk. *See Heimke v. Munoz*, 106 Ariz. 26, 30, 470 P.2d 107, 111 (1970)(*overruled on other grounds by Jurek v. Jurek*, 124 Ariz. 596, 606 P.2d 812 (1980)).

¶ 20 Plaintiff further argues that use of the word "should" in Instruction 22 constituted a violation of Article XVIII, Section 5. The defense replies that "should" has sometimes been approved by this court because it normally does not mandate a jury's findings. *See Rimondi v. Briggs*, 124 Ariz. 561, 565, 606 P.2d 412, 416 (1980) (citing several Arizona cases in which such an analysis has been applied).[1] However, when this instruction is considered together with the erroneous number 21, it becomes clear that the jury was either not free to decide for itself whether the plaintiff should have borne some responsibility for his refusal of blood, or at the least it was placed in a hopelessly confused situation. *See Manhattan–Dickman Const. Co. v. Shawler*, 113 Ariz. 549, 555, 558 P.2d 894, 900 (1976) (stating that in a contributory negligence instruction, "the word 'should' tends to be confusing," and use of the word "may" is preferable).

¶ 21 The court of appeals, in its memorandum decision, asserted that "this case did not actually present an assumption of the risk issue" because Reinen's "limited, express assumption of risk was never at issue in the liability portion of the trial." It explained that "the court's instructions concerning assumption of risk were relevant to damages only if the jury found Defendants negligent," and in a footnote added that "[b]ecause the jury rendered a defense verdict, they never reached the issue whether Reinen's damages should be mitigated by his refusal of blood products."[2] Defendants make a similar argument here, concluding without citation of authority that any error in the instructions was therefore harmless. We respectfully disagree.

¶ 22 Jury instructions in violation of Article XVIII, Section 5 have uniformly been held to warrant reversal. *See Trojanovich v. Marshall*, 95 Ariz. 145, 146, 388 P.2d 149, 150 (1963); *Michie v. Calhoun*, 85 Ariz. 270, 274, 336 P.2d 370, 374 (1959); *Wolfswinkel v. Southern Pacific Co.*, 81 Ariz. 302, 307, 305 P.2d 447, 450 (1956); *Salt River Project Agric. Improv. and Power Dist. v. Westinghouse Elec. Corp.*, 176 Ariz. 383, 389, 861 P.2d 668, 674 (Ariz.Ct.App.1993). These decisions, it is true, were rendered prior to the adoption of comparative fault in Arizona. *See* Ariz.Rev.Stat. § 12–2505 (amended in 1984). Thus, the jurors in each instance were instructed that if they found contributory negligence or assumption of risk, the plaintiff was not entitled to recover. In the face of a defense verdict, it was impossible to know how the jury had reached its decision

---

1. Although the instruction in *Rimondi v. Briggs*, 124 Ariz. 561, 606 P.2d 412 (1980), involved contributory negligence rather than assumption of risk, the two safeguards appear in the same constitutional provision and the analysis applies to both. *See Chavez v. Pima County*, 107 Ariz. 358, 361, 488 P.2d 978, 981 (1971).

2. The court went on to say that "even if assumption of the risk is at issue... this situation is not akin to a general assumption of the risk as contemplated by the Arizona Constitution." No authority is cited for this proposition. Rather, the court's analysis relies on *Hildebrand v. Minyard*, 16 Ariz.App. 583, 585, 494 P.2d 1328, 1330 (Ariz.Ct.App.1972)(distinguishing express and implied assumption of the risk from contributory

negligence), and *Valley Nat. Bank v. National Ass'n. For Stock Car Auto Racing, Inc.*, 153 Ariz. 374, 377, 736 P.2d 1186, 1189 (Ariz.Ct.App.1987)(discussing the effects of a written release). In *Hildebrand*, the sole issue was whether the evidence justified an assumption of the risk instruction. *Valley National Bank* dealt with the validity of express, general releases of any and all liability arising out of the negligence of the defendants, which we do not have here. Neither opinion says anything at all about the Arizona Constitution. In any event, the jury instructions before us demonstrate that the instant case was submitted for decision on an assumption of risk theory—and, as the court of appeals acknowledged, that is also the issue briefed and argued on appeal.

and whether it had considered the erroneous charge. Defendants argue that this case is different because the instructions here told the jurors that they should apportion fault upon a finding of assumption of risk. Since there was no apportionment, the defense asserts, the jury must not have reached the assumption of risk issue at all. Therefore, there can be no prejudice.

¶ 23 It should be obvious that if we were to accept this argument, even the most flagrant violations of Article XVIII, Section 5 could be treated as harmless in the presence of a defense verdict. Consequently, our unique constitutional provision would have been rendered meaningless by legislative enactments adopting comparative fault. Such a result is untenable. Furthermore, the defense argument fails to consider that this jury was legally free to do whatever it wished with the assumption of risk issue, including considering it out of order and/or denying any relief to plaintiff. Thus, we are in the same position as before the enactment of Ariz.Rev. Stat. § 12–2505. It is not possible to know how the jurors reached their decision and to what extent they were influenced by the instructions under consideration.

¶ 24 In *Perkins v. Komarnyckyj*, 172 Ariz. 115, 119, 834 P.2d 1260, 1264 (1992), we held that some errors are "inherently prejudicial," and "no further showing is needed to require reversal, remand, and retrial on all issues." In that case, the trial judge received the following question from the jury during deliberations: "If any jurists [sic] should find for the defendants, should those jurists take part in the determination of the percentage of liabilities and damages?" *Id.* at 116, 834 P.2d at 1261. The judge responded that "[t]he jurors who agree on liability are the ones who should fix damages and sign the form of verdict." *Id.* This response, and those to other questions, were made without consulting the attorneys in the case. *See id.* The court of appeals held that this violated the prohibition against ex parte communications with the jury and that, in any event, the judge's response misstated the proper rule of law. *See id.* at 117, 834 P.2d at 1262. Reversal was clearly required on the damage issues. However, the court reasoned, because all of the jurors participated in the determination of liability, that part of the verdict was not affected. Therefore, the court affirmed the judgment on liability and remanded only as to damages. *See id.*

¶ 25 On review, we remanded everything, holding that "the judge's error was inherently prejudicial, and no further showing is needed to require reversal, remand, and retrial on all issues." *Id.* at 119, 834 P.2d at 1264. In reaching this conclusion, we noted:

[U]ntil they return the verdict, the jury may decide again and again to reconsider one or all of the issues in the case. For example, a jury might vote that both defendants in a tort case are liable, and then later, in the course of allocating percentages of fault or fixing damages, conclude that one defendant was not really liable at all. Consequently, we do not and cannot know or assume that at any point in the deliberations, a majority of the jury unalterably concluded that Defendants were liable for Perkins' death.

*Id.*

¶ 26 It might be suggested that *Perkins* is distinguishable because the error there was structural. The net result, however, is the same since in both cases it is impossible to determine whether or how jury deliberations were affected. As in *Perkins*, the jurors here might have decided that some or all of the defendants were negligent, moved on to consider the erroneous assumption of risk instructions, and then as a result of that discussion returned to conclude that the defendants were not liable. Although assumption of the risk theoretically should not have become an issue until a determination of negligence was made, we cannot know whether and to what extent the jurors considered the flawed instructions. We do know that they were constitutionally entitled to treat the issue as they wished. Additionally, we can tell from the trial transcript that assumption of the risk was prominently featured throughout the defendants' cases and in their arguments to the jury. As in *Perkins*, we cannot assume that the erroneous instructions did not affect the jurors' deliberations. Therefore, we find that the plaintiff was deprived of his constitutional right to

have the jury be the sole arbiter of the presence and application of assumption of risk.

¶ 27 Plaintiff also argues that Instruction 22 violated Ariz. Const. art. VI, § 27 (improper judicial comment on the evidence) and Ariz. Const. art. XX, ¶ 1 (toleration of religion provision). We need not reach these arguments.

¶ 28 The memorandum decision of the court of appeals is vacated. The orders of the trial court are reversed and the matter remanded for a new trial as to all defendants.

CONCURRING: CHARLES E. JONES, Vice Chief Justice, STANLEY G. FELDMAN, Justice, FREDERICK J. MARTONE, Justice, and RUTH V. McGREGOR, Justice.