NOTICE: NOT FOR PUBLICATION.
UNDER ARIZ. R. SUP. CT. 111(c), THIS DECISION DOES NOT CREATE LEGAL PRECEDENT
AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

BRIDGET FUQUA, *Plaintiff/Appellant*,

*v.*

DOLLAR TREE STORES, INC., an Arizona corporation
dba DOLLAR TREE, *Defendant/Appellee*.

No. 1 CA-CV 12-0720
FILED 4-17-2014

Appeal from the Superior Court in Maricopa County
No. CV2008-001621
The Honorable Michael J. Herrod, Judge

**AFFIRMED IN PART; VACATED IN PART; REMANDED**

COUNSEL

Law Office of Scott E. Boehm PC, Phoenix
By Scott E. Boehm

Arly Richau, Scottsdale

*Co-Counsel for Plaintiff/Appellant*

The Herzog Law Firm PC, Scottsdale
By Michael W. Herzog

Jones Skelton & Hochuli PLC, Phoenix
By Eileen Dennis GilBride

*Co-Counsel for Defendant/Appellee*

---

**MEMORANDUM DECISION**

Judge Margaret H. Downie delivered the decision of the Court, in which Presiding Judge Kent E. Cattani and Judge Michael J. Brown joined.

---

**D O W N I E,** Judge:

**¶1** Bridget Fuqua appeals from a jury verdict in her lawsuit against Dollar Tree Stores, Inc., dba Dollar Tree ("Dollar Tree") and from the denial of her motion for new trial. We affirm the evidentiary rulings Fuqua challenges but conclude that the issue of comparative fault was improperly submitted to the jury. We therefore affirm the jury's damages award but vacate its determination that Fuqua was 75% at fault and the corresponding reduction in her recovery.

**FACTS AND PROCEDURAL HISTORY**[1]

**¶2** As Fuqua was exiting a handicapped-accessible restroom at a Dollar Tree store on February 13, 2006, the door closed rapidly, striking her in the back and causing her to fall and fracture her right hip. Fuqua sued Dollar Tree for negligence.

**¶3** Before the Dollar Tree fall, Fuqua had significant and long-standing medical problems. During the 1990s, she underwent surgical procedures that led to spinal cord injury, leg weakness, a drop foot on the right side, and chronic pain syndrome. Fuqua also suffered from severe

---

[1] We view the facts and reasonable inferences therefrom in the light most favorable to upholding the verdict. *Romero v. Sw. Ambulance*, 211 Ariz. 200, 202, ¶ 2, 119 P.3d 467, 469 (App. 2005).

osteoporosis, a limited and painful gait, curvature of the spine, degenerative disc disease, autonomic dysreflexia, cardiac disease, chronic headaches, right leg atrophy, impaired hip flexor strength, and a "circumducted gait on the right." As far back as 2000, Fuqua was diagnosed with "progressive problems with mobility of the right leg." In 2004, one of her physicians wrote:

> The patient continues with pain, which is diffuse. It is an aching, throbbing, shooting, stabbing, gnawing, tender, burning, exhausting, tiring, nagging, numb, miserable, and unbearable pain that is continuous and worst throughout the day. It is fixed at about 10. She does take Talwin for pain. She also has diazepam and Soma, which she takes which has allowed for at least functionality with ambulation with a walker.

**¶4**        Dollar Tree conceded that its restroom door closed too fast, that it was too heavy, and that it hit Fuqua, causing her to fall and fracture her hip. But Dollar Tree contended Fuqua was partially at fault for the accident and persuaded the court to instruct jurors regarding comparative fault.

**¶5**        The jury found in favor of Fuqua and set her damages at $170,000. It apportioned 75% of the fault to Fuqua and 25% to Dollar Tree. After unsuccessfully moving for a new trial, Fuqua timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(1).

## DISCUSSION

### I.    Comparative Fault

**¶6**        Fuqua contends the court erred by denying her motion for judgment as a matter of law ("JMOL") on the issue of comparative fault. She also challenges the denial of her motion for new trial on the grounds that the 75% fault allocation was not supported by the evidence.

¶7        We agree that the trial evidence was insufficient to submit the issue of comparative fault to the jury.  Based on that determination, we need not reach the allocation issue.[2]

¶8        Dollar Tree argued that jurors should apportion fault to Fuqua because she had used the restroom at the store on previous occasions and knew that the door was heavy.  It contended that despite this knowledge and a physician's warning she was at increased risk for fractures due to osteoporosis, Fuqua did not use a cane or walker when visiting the restroom on February 13, 2006 and did not take reasonable precautions for her own safety upon exiting the restroom.

¶9        We review *de novo* the denial of a motion for judgment as a matter of law, considering the evidence in the light most favorable to the non-moving party.  *Desert Mountain Properties Ltd. P'ship v. Liberty Mut. Fire Ins. Co.*, 225 Ariz. 194, 200, ¶ 12, 236 P.3d 421, 427 (App. 2010).  A trial court should grant a motion for judgment as a matter of law "if the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense." *Salica v. Tucson Heath Hospital − Carondelet, L.L.C.*, 224 Ariz. 414, 417, ¶ 11, 231 P.3d 946, 949 (App. 2010) (citation omitted).

¶10        As relevant to the comparative fault issue, the final jury instructions stated:

> Fault is [] negligence that was a cause of Plaintiff's injury.  Negligence is the failure to use reasonable care.  Negligence may consist of action or inaction.  Negligence is the failure to act as a reasonably careful person would act under the circumstances.
>
> . . . .

---

[2]        We also do not address Fuqua's contention that the court erred by refusing to give a spoliation instruction.  Fuqua sought such an instruction only in the event comparative fault was before the jury.  Because we are vacating the reduction in Fuqua's recovery based on comparative fault, the spoliation issue is moot.

> Before you can find any party at fault, you must find that party's negligence was a cause of Bridget Fuqua's injury.
>
> Negligence causes an injury if it helps produce the injury and if the injury would not have happened without the negligence. There may be more than one cause of any injury.

*See also* A.R.S. § 12-2506(F) ("'Fault' means an actionable breach of legal duty, act or omission proximately causing or contributing to injury or damages sustained by a person seeking recovery.").

¶11        Viewing the evidence in the light most favorable to Dollar Tree, *Desert Mountain*, 225 Ariz. at 200, ¶ 12, 236 P.3d at 427, reasonable jurors might conclude that Fuqua failed to "use reasonable care" by not utilizing a cane or walker when visiting the store's restroom. Nothing in the record, though, establishes that such a failure proximately caused or contributed to Fuqua's injury. There is no evidence, for example, that Fuqua could have avoided being knocked to the ground with the same force by the fast-closing restroom door had she been using a cane or walker. Nor did Dollar Tree ever make such an assertion. In arguing against Fuqua's JMOL motion, Dollar Tree's counsel stated simply: "The causation is the door hit her. The question is, was she acting unreasonably in using the restroom given the fact that it always has been as heavy as it was. She had been there earlier, and she knew it was heavy. I think that's enough to lead the jury to decide that she acted unreasonably. . . ."[3]

---

[3]        Dollar Tree's closing argument regarding Fuqua's purported fault was:

> All we're saying is, look, she's been there a lot of times before. She knows the door is heavy. She knows she's got all of these physical problems. And we say, should she look out for herself a little bit? You might say, no, you're full of beans or something. Okay. You say that, you say that. But that's what the case is about, and that's why there's a line on that form, the verdict form for Ms. Fuqua, for you to decide, should she have been more careful? Did she act unreasonably under the circumstances? . . . It's your decision entirely.

¶12 There was no evidence that the weight of the restroom door would lead a reasonable person to understand that it was dangerous or would close more than three times faster than permitted by the Americans with Disabilities Act ("ADA"). Indeed, the only evidence on that point came from Fuqua's expert, Brent Beals, who characterized the door-closing speed as "unsafe" and drastically out of compliance with the ADA. He further testified that the door's weight would not signal to a patron that it was dangerous.

¶13 There was insufficient evidence of comparative fault to submit the issue to the jury. We therefore vacate the determination that Fuqua was 75% at fault. On remand, the court shall enter an amended judgment in accordance with the jury's verdict that is not reduced by any fault attributable to Fuqua.

## II. Evidentiary Rulings

¶14 At trial, Fuqua attempted to elicit testimony from several witnesses to the effect that her 2006 hip fracture caused numerous subsequent falls and injuries. The trial court generally sustained Dollar Tree's objections to such evidence, ruling that the proffered witnesses lacked foundation to opine about the cause of the falls and injuries.

¶15 Only one of Fuqua's witnesses potentially had foundational information sufficient to offer opinions about the cause of falls and injuries occurring after February 13, 2006. As noted *supra*, Fuqua had chronic and significant medical problems that pre-dated the Dollar Tree incident, including right leg weakness and atrophy, a drop foot on the right side, and deteriorating mobility on the right side. Fuqua admitted she had "permanent injuries" from her spinal cord issues, and her orthopedic surgeon acknowledged "permanent disabilities" from those injuries. Additionally, in 2002, Fuqua applied for Social Security disability benefits. She described 24-hour-a-day pain throughout her entire body. She avowed that it had progressively worsened since her second spinal cord surgery and described her pain as "indescribably so bad – constantly burning [throughout] my entire-disabled-paralyzed body." Fuqua stated that she required "constant help" for tasks such as lifting her leg into bed, shopping, getting dressed, and household chores. She was using leg braces, walking canes, and a wheeled walker at the time. She labeled herself "almost helpless" and stated that her life was "unbearable." Fuqua remained on Social Security disability status at the time of the Dollar Tree fall.

6

¶16 Fuqua's medical records describe numerous falls prior to February 13, 2006, and one of her witnesses conceded Fuqua was "at a high risk for falling" before the Dollar Tree incident due to her right-sided weakness and spastic hemiparetic gait. Less than three months before the Dollar Tree fall, one of Fuqua's long-time physicians wrote:

> She is having a labored gait and antalgic gait using the front-wheel walker. . . . As far as her mobility, she is still ambulating with difficulty. . . .

> The patient is also having spasticity, which is a result of the central nervous system upper motoneuron injury due to an ependymoma that required resection x2.

¶17 It is against this backdrop that we assess whether the trial court abused its discretion by sustaining foundation objections to testimony about the cause of post-Dollar Tree falls. In order for any medical expert to testify that such falls were caused by the 2006 hip fracture, as opposed to Fuqua's significant pre-existing conditions, he or she would necessarily need to be knowledgeable about Fuqua's medical history. Yet only one of Fuqua's proffered witnesses — Dr. Deborah Heath — had reviewed medical records pre-dating the Dollar Tree fall. The trial court could reasonably conclude that physicians who had not reviewed Fuqua's prior medical records lacked foundation to opine about whether falls and injuries occurring after February 13, 2006 were caused by the Dollar Tree hip fracture.

¶18 The incidents Fuqua wanted Dr. Heath to testify about were[4]:

- In May 2006, Fuqua fell while leaning over the bathtub.

- In September 2006, Fuqua stumbled in the bathroom and fractured her right kneecap.

- In November 2007, Fuqua fell at a restaurant when the wheel of her walker stuck on a curb.

---

[4] Fuqua sustained other injuries, including stress fractures, that occurred independently of specific falls.

- In March 2008, Fuqua fell while walking in her house.

- In October 2008, Fuqua fell while dismounting a treadmill.

- In March 2010, a rolling chair moved when Fuqua attempted to sit on it, and she fractured her femur.

¶19 The trial court heard extensive argument about the foundation for Dr. Heath's opinions. Outside the jury's presence, the court emphasized the need for Fuqua to offer adequate foundation. Its primary rationale for ultimately excluding Dr. Heath's causation opinions was that she lacked knowledge about how the falls occurred.

¶20 We will not overturn a trial court's ruling excluding evidence absent a clear abuse of discretion and resulting prejudice. *Schwartz v. Farmers Ins. Co. of Ariz.*, 166 Ariz. 33, 38, 800 P.2d 20, 25 (App. 1990). In reviewing for an abuse of discretion, "[t]he question is not whether the judges of this court would have made an original like ruling, but whether a judicial mind, in view of the law and circumstances, could have made the ruling without exceeding the bounds of reason. We cannot substitute our discretion for that of the trial judge." *Associated Indem. Corp. v. Warner,* 143 Ariz. 567, 571, 694 P.2d 1181, 1185 (1985). Whether a party has offered sufficient foundation for specific evidence is a determination that lies within the sound discretion of the trial court. *See State v. Jackson,* 170 Ariz. 89, 93, 821 P.2d 1374, 1378 (App. 1991).

¶21 Fuqua argues that a "known and expected risk of standing and walking on the surgically-repaired hip was falling." But given Fuqua's significant pre-existing disabilities, the trial court could reasonably conclude that an expert opining about the cause of post-February 2006 injuries must have adequate information about how the incidents occurred in order to distinguish, where possible, between falls caused by pre-existing disabilities versus hip fracture-related causes.[5] Dr. Heath lacked such information. Even assuming the accuracy of Fuqua's

---

[5] Dr. Hofstedt conceded that he could not say to a reasonable degree of medical probability that any specific fall after February 13, 2006 "was the result of that hip fracture injury as opposed to other conditions."

descriptions of some of the incidents, simply knowing that her leg "buckled" or "gave way" and that her right side was weak offered little to no foundation for testimony about the actual cause of the falls. Fuqua's medical records offered no greater specificity, and, at times, contradicted the "buckling" premise.[6]

¶22        Moreover, the record demonstrates that Fuqua was permitted to present — to a significant degree — causation testimony from Dr. Heath. *See Gemstar Ltd. v. Ernst & Young*, 185 Ariz. 493, 506, 917 P.2d 222, 235 (1996) ("We will not disturb a trial court's rulings on the exclusion or admission of evidence unless a clear abuse of discretion appears and prejudice results."). On several occasions, Dr. Heath told the jury that Fuqua's lack of recovery from the hip fracture contributed to the later falls, changed her gait, and negatively affected her balance. She opined that Fuqua never regained the strength or ability to walk that she possessed before the Dollar Tree fall and that the later falls were typical of a person in her weakened condition. At one point, Dr. Heath testified:

> After the February 2006 fracture, then whenever she had her falls –- first of all, the falls were generally because of weakness and what had been described as buckling, but that means that it would just give out and just a simple now collapse would actually translate into either bigger bruises, but then eventually they began to result in lacerations, so cutting of the actual skin, but also fractures.

¶23        During direct examination, Fuqua's counsel asked Dr. Heath whether an opinion she had offered about the March 2008 incident was "consistent with your belief that all of these injuries were causally connected to the hip fracture on February 13, 2006," to which the doctor responded, "Yes." Dr. Heath also testified that Fuqua's "lack of recovery due to her [hip] injury then contributed to her falls, and she never regained strength and never recovered prior to her February 13, 2006 ability to walk or gain strength." Other doctors also testified that the 2006

---

[6]        Dr. Heath's records, for example, describe the mechanics of the May 2006 fall as a slipping incident. And Fuqua provided varying explanations for how specific incidents occurred — particularly the October 2008 treadmill fall.

hip fracture caused pain and weakness that rendered Fuqua more susceptible to falls and stress fractures. [7]

¶24          The fact that Dollar Tree stipulated Dr. Heath's report into evidence did not preclude subsequent objections to the scope of her testimony.  In pertinent part, that report states that the "health problems Ms. Fuqua has encountered since February 13, 2006 and that are discussed in my report are causally connected to her injuries she suffered on February 13, 2006."  Even assuming that this statement and the precluded causation testimony are one and the same, the authorities Fuqua cites do not stand for the proposition that a party who stipulates to admission of a document may not object to testimony offered on the same topic.  *See Estate of Reinen v. N. Ariz. Orthopedics, Ltd.*, 198 Ariz. 283, 286-87, 9 P.3d 314, 317-18 (2000) (defense counsel who purposely did not object to expert witness' qualifications or the foundation for his opinions during testimony waived those legal objections); *State v. Walton*, 159 Ariz. 571, 583, 769 P.2d 1017, 1029 (1989) (Defendant who stipulated to foundation for admission of murder weapon could not later complain of insufficient foundation.), *aff'd,* 497 U.S. 639 (1990), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002); *Pulliam v. Pulliam*, 139 Ariz. 343, 344-45, 678 P.2d 528, 529-30 (App. 1984) (parties were bound by stipulation that a child counselor would not be called as a witness).

¶25          Furthermore, although Fuqua's counsel stated that he was attempting to elicit testimony explaining Dr. Heath's report, he did not argue — as Fuqua does on appeal — that Dr. Heath's testimony was admissible, and any foundational objection waived, simply because Dollar Tree had stipulated to admission of the report.  *Cf. State v. Moody*, 208 Ariz. 424, 455, ¶ 120, 94 P.3d 1119, 1150 (2004) ("[I]f evidence is objected to on one ground in the trial court and admitted over that objection, other grounds raised for the first time on appeal are waived."); *Trantor v. Fredrikson*, 179 Ariz. 299, 300, 878 P.2d 657, 658 (1994) ("absent

---

[7]      Dr. Stephen Brown, who performed an independent medical examination at Dollar Tree's request, testified that Fuqua had a "very nice recovery" from the hip fracture, which healed "without consequence," and stated that her ongoing problems were attributable to pre-existing medical conditions. Dollar Tree did not ask Dr. Brown to opine at trial about the cause of falls occurring after February 13, 2006 — something Fuqua's counsel pointed out to the jury in his closing argument.

extraordinary circumstances, errors not raised in the trial court cannot be raised on appeal"). Finally, during closing arguments, Fuqua was free to discuss any evidence of record, including Dr. Heath's report, which she did repeatedly.

## III. Life Care Plan

**¶26** Fuqua disclosed the opinions of Loretta Lukens, a rehabilitation nurse who prepared a "life care plan" detailing medical and daily care assistance Fuqua would reportedly need for the remainder of her life. Dollar Tree moved *in limine* to preclude that evidence. Before trial, the court granted Dollar Tree's motion in part, ruling that Lukens could not opine regarding future care costs without proper foundation. During trial, the court excluded Lukens' report and limited her testimony based on Dollar Tree's relevance and foundation objections. The court concluded there was "no testimony that the costs of the life care plan are causally related to the hip injury alone."

**¶27** We find no abuse of discretion. The trial court could reasonably conclude that Lukens' report and proffered opinions lacked foundation. And if Fuqua's future needs were not causally linked to the 2006 hip fracture, they were irrelevant.

**¶28** Lukens was not qualified to offer medical causation testimony. She instead relied on Dr. Anthony Lee, who reportedly agreed that her life care plan was "a reasonable treatment plan for Bridget Fuqua and is medically necessary."[8] The problem, though, is that the record establishes no foundation for Dr. Lee's opinion. Dr. Lee first treated Fuqua in 2007. The only information he had about her prior medical conditions came from Fuqua herself. Dr. Lee conceded that some of Fuqua's ongoing pain was attributable to pre-existing problems, and he testified that even without the 2006 hip fracture, she likely would have required pain management and physical therapy.

**¶29** Fuqua also suggests that Dr. Heath provided the necessary foundation for Lukens' report and opinions. But neither Dr. Heath nor any other physician opined that all of the future care needs detailed in

---

[8] At deposition, Lukens testified that she relied to a lesser extent on Dr. Sellers, who first treated Fuqua in February 2007 and did not review medical records pre-dating the Dollar Tree fall.

Lukens' report were necessitated by the 2006 hip fracture.[9]  And Lukens confirmed that her plan was based on the assumption that all falls occurring after February 13, 2006 were caused by the Dollar Tree hip fracture — an assumption unsupported by the trial record.  Under these circumstances, the court did not abuse its discretion by excluding Lukens' report and limiting her trial testimony.  *See City of Kingman v. Havatone*, 14 Ariz. App. 585, 588, 485 P.2d 574, 577 (1971) (doctor's testimony as to future medical expenses had the requisite foundation of an affirmative medical opinion and recommendation).

## CONCLUSION

**¶30**          We affirm the jury's verdict in favor of Fuqua and the amount of the damages award.  We vacate the determination that Fuqua was 75% at fault and remand to the superior court for entry of an amended judgment that does not reduce Fuqua's recovery based on comparative fault.   We award Fuqua her appellate costs upon compliance with ARCAP 21.



Ruth A. Willingham · Clerk of the Court
FILED: MJT

---

9          Dr. Hofstedt agreed during his deposition that it was "impossible to tell how much of [Fuqua's] current problems are related to the February 13, 2006 hip fracture as opposed to anything else."