NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

IN RE: MS2020-000001

No. 1 CA-MH 21-0083 SP
FILED 9-6-2022

---

Appeal from the Superior Court in Maricopa County
No. MS2020-000001
The Honorable Jay M. Polk, Judge

**AFFIRMED**

---

COUNSEL

Maricopa County Legal Advocate's Office, Phoenix
By Michelle DeWaelsche
*Counsel for Appellant*

Maricopa County Attorney's Office, Phoenix
By Robert A. Walsh
*Counsel for Appellee*

---

**MEMORANDUM DECISION**

Judge D. Steven Williams delivered the decision of the court, in which Presiding Judge David D. Weinzweig and Judge Randall M. Howe joined.

---

**W I L L I A M S**, Judge:

¶1 C.S. appeals an order of commitment following a 7-1 jury determination that he is a sexually violent person. C.S. contends that the superior court erred in denying his motions for judgment as a matter of law; that the nonunanimous jury verdict deprived him of his right to due process under the Arizona and United States Constitutions; and that counsel was ineffective. For the following reasons, we affirm.

**FACTUAL AND PROCEDURAL HISTORY**

¶2 Between 1985 and 1997, C.S. was convicted of several violent sexual offenses against minors. Following dual convictions in 1997, C.S. was sentenced to 24 years' imprisonment. Before his scheduled release, the State petitioned for an order of detention alleging that C.S. was a sexually violent person under A.R.S. § 36-3701(7).

¶3 In November 2020, at the State's request, the court appointed Dr. David Thornton as the State's expert witness. A month later, the court held a hearing pursuant to A.R.S. § 36-3705 to determine whether probable cause existed to believe that C.S. was a sexually violent person. The court found probable cause existed, and the matter proceeded to trial.

¶4 Before trial, C.S.'s counsel retained Dr. Luis Rosell to provide expert testimony and the State reiterated its intention to call Dr. Thornton. Both experts conducted pretrial interviews of C.S.

¶5 Following the experts' interviews, C.S.'s counsel interviewed Dr. Thornton and subsequently filed several motions *in limine* to preclude Dr. Thornton from repeating certain statements he made during the interview and in his report. The parties then filed a joint pretrial statement that listed Dr. Thornton as the State's anticipated trial witness. C.S. also stated his intent to use portions of Dr. Thornton's recorded interview at trial. At no point before trial did C.S. object to Dr. Thornton's competency to testify as an expert.

**¶6** At trial, Dr. Thornton testified he diagnosed C.S. with pedophilic disorder, a type of paraphilia. Dr. Thornton also noted that, following C.S.'s imprisonment in 1997, C.S. was diagnosed with schizoaffective disorder. And, despite testifying that the schizoaffective disorder exacerbates C.S.'s inability to control his pedophilic urges, Dr. Thornton also testified the pedophilic disorder was the "main driver" behind C.S.'s inability to control his behavior. Dr. Thornton further testified that it was "highly probable" C.S. would reoffend.

**¶7** Following the State's case-in-chief, C.S. moved for judgment as a matter of law on two bases. C.S. first argued Dr. Thornton was not competent to testify as an expert witness; and, without his testimony, the State had not presented a case against him. C.S. also argued the State had not presented sufficient evidence that his pedophilic disorder, rather than his schizoaffective disorder, would cause him to reoffend. The court denied both motions.

**¶8** Seven of the eight jurors found the State had proven, beyond a reasonable doubt, that C.S. was a sexually violent person. The court ordered C.S. be committed to the Arizona Community Protection and Treatment Center ("ACPTC").

**¶9** C.S. timely appealed. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution, A.R.S. §§ 12-2101(A)(10) and 36-546.01.

## DISCUSSION

*I.    The Court Properly Denied C.S.'s Motions for Judgment as a Matter of Law*

**¶10** We review de novo the denial of a motion for judgment as a matter of law. *See Roe v. Austin*, 246 Ariz. 21, 24, ¶ 7 (App. 2018).

**¶11** "To civilly commit an individual under the [Sexually Violent Persons Act], the state must prove, beyond a reasonable doubt, that the individual is [a sexually violent person]." *In re Leon G.*, 204 Ariz. 15, 22, ¶ 23 (2002); A.R.S. § 36-3707(A). A sexually violent person is defined as a person who "[h]as ever been convicted of or found guilty but insane of a sexually violent offense or was charged with a sexually violent offense and was determined incompetent to stand trial." A.R.S. § 36-3701(7)(a). Additionally, the person must exhibit "a mental disorder that makes the person likely to engage in acts of sexual violence." A.R.S. § 36-3701(7)(b). A "mental disorder" means a "paraphilia, personality disorder or conduct disorder or any combination of paraphilia, personality disorder and

conduct disorder that predisposes a person to commit sexual acts to such a degree as to render the person a danger to the health and safety of others." A.R.S. § 36-3701(5).

### A. Competency of Dr. Thornton

¶12 Under the Sexually Violent Persons Act, each party may select a "competent professional" to evaluate the defendant and to testify at trial, provided the court concludes the professional is "[f]amiliar with the state's sexually violent persons statutes and sexual offender treatment programs available in [the] state." A.R.S. § 36-3703 (providing guidelines for the selection of competent professionals); A.R.S. § 36-3701(2) (defining "competent professional").

¶13 At trial, neither party elicited testimony from Dr. Thornton regarding his familiarity with the state's sexual offender treatment programs. Nevertheless, C.S. did not object to Dr. Thornton's testimony until the close of the State's case. C.S. argued Dr. Thornton was not competent to testify under A.R.S. § 36-3701(2) because he had not testified to his familiarity with the state's sexual offender treatment programs.

¶14 "An objection to proffered testimony must be made either prior to or at the time it is given, and failure to do so constitutes a waiver." *Estate of Reinen v. N. Ariz. Orthopedics, Ltd.*, 198 Ariz. 283, 286, ¶ 9 (2000). In *Reinen*, no objection to the qualifications of the expert witness was raised "until the close of the plaintiff's evidence." *Id.* The supreme court held that "[b]y failing to complain before or during [the expert]'s testimony, the defendants waived any legal objection to his qualifications or the foundation for his opinions." *Id.*

¶15 Just as in *Reinen*, C.S. did not raise a contemporaneous objection to Dr. Thornton's qualifications. C.S. could have also objected when Dr. Thornton was appointed as the State's expert witness in November of 2020—almost a year before trial—but failed to do so. Because C.S. failed to timely raise this objection to the superior court, C.S. waived the right to complain of Dr. Thornton's qualifications on appeal. *See, e.g., id.*

### B. C.S.'s Mental Disorder

¶16 C.S. also argued he was entitled to judgment as a matter of law because the State had not proven that it was C.S.'s pedophilic disorder that would cause him to reoffend. C.S. argued that Dr. Thornton's testimony only established that C.S.'s schizoaffective disorder, which is not

a requisite mental disorder under A.R.S. § 36-3701(5), would cause him to reoffend.

**¶17** "A court may grant [judgment as a matter of law] only when 'a reasonable jury would not have a legally sufficient evidentiary basis to find for [a] party' on an issue that is necessary to the party's claim or defense." *Dupray v. JAI Dining Services (Phx.), Inc.*, 245 Ariz. 578, 582, ¶ 11 (App. 2018) (quoting Ariz. R. Civ. P. 50(a)).

**¶18** Despite Dr. Thornton's opinion that C.S.'s schizoaffective disorder would render him "less able to restrain his pedophilic urges," Dr. Thornton also testified C.S.'s pedophilic disorder was the "main driver" behind C.S.'s inability to control his behavior and that C.S.'s schizoaffective disorder, which developed in prison, was not present when C.S. was offending in the community. This evidence provided a legally sufficient basis for the jury to find C.S.'s pedophilic disorder rendered him unable to control his behavior, which precluded the court from granting the motion for judgment as a matter of law.

*II.     A Unanimous Jury Verdict is not Required in a Civil Commitment Case Brought under the Sexually Violent Persons Act*

**¶19** In Arizona, a jury deciding a civil commitment case brought under the Sexually Violent Persons Act must consist of eight persons, and the concurrence of six or more jurors is sufficient to render a verdict. A.R.S. § 21-102(C); *State ex. rel. Romley v. Superior Court*, 198 Ariz. 164, 166-67, ¶ 8 (App. 2000); *see also* Ariz. Const., art. 2, § 23; Ariz. R. Civ. P. 49(d)(1). Nevertheless, C.S. suggests that federal due process requires a unanimous verdict in a civil commitment case brought under the Sexually Violent Persons Act.

**¶20** In support of this assertion, C.S. cites the United States Supreme Court's decision in *Ramos v. Louisiana*, 140 S. Ct. 1390 (2020). In *Ramos*, the Supreme Court held a unanimous verdict is required to convict a *criminal* defendant of a serious offense. *Id.* at 1391. C.S. contends the holding in *Ramos* should be extended to civil commitment proceedings under Arizona's Sexually Violent Persons Act.

**¶21** "As the United States Supreme Court and Arizona's appellate courts have repeatedly held, commitment proceedings under the [Sexually Violent Persons] Act are strictly civil in nature." *In re Commitment of Conn*, 207 Ariz. 257, 259, ¶ 7 (App. 2004). The mere fact the legislature has provided "some of the safeguards applicable in criminal trials—the rights to counsel, to trial by jury, to confront and cross-examine witnesses, and to

proof beyond a reasonable doubt—does not transform [Sexually Violent Persons] proceedings into criminal prosecutions with 'the full panoply of rights applicable there.'" *Id.* (quoting *Allen v. Illinois*, 478 U.S. 364, 372 (1986)). Accordingly, we decline to extend the holding in *Ramos*, which applied to criminal defendants, to civil commitment proceedings under the Sexually Violent Persons Act.

### III.  *C.S.'s Claims of Ineffective Assistance of Counsel Fail*

**¶22**      C.S. claims his counsel was ineffective by "failing to notify the court of [C.S.'s] objection to Dr. Thornton as a competent professional [under A.R.S. § 36-3702(2)]" or "to request a pretrial evidentiary hearing to determine whether Dr. Thornton qualified as a competent professional."

**¶23**      "[T]he Due Process Clause of the Fourteenth Amendment requires that a civil commitment patient receive effective assistance of counsel." *In re MH2010-002637*, 228 Ariz. 74, 82, ¶ 30 (App. 2011). A claim of ineffective assistance of counsel requires a showing that counsel provided deficient performance and the deficiency prejudiced the patient. *State ex. rel. Thomas v. Rayes*, 214 Ariz. 411, 413, ¶ 10 (2007) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)); *see also Matter of Carmody*, 653 N.E.2d 977, 984 (Ill. App. 1995) (adopting *Strickland* test in civil commitment proceedings).

**¶24**      C.S. argues that but-for counsel's failure to object to Dr. Thornton's competency or request a pretrial hearing to determine Dr. Thornton's competency, the outcome of the trial would have been different.

**¶25**      C.S.'s argument is speculative, at best. *See State v. Meeker*, 143 Ariz. 256, 264 (1984) ("Proof of ineffectiveness must be a demonstrable reality rather than a matter of speculation."). C.S. fails to address the probability that, had counsel raised the issue before trial, the State could have cured the defect. *See Strickland*, 466 U.S. at 694 (finding that a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"). C.S. has failed to present a colorable claim for relief.

**¶26**      Lastly, C.S. argues counsel was ineffective by failing to object to the nonunanimous verdict. For the reasons outlined, *supra* ¶¶ 19-21, we hold C.S. has not demonstrated that counsel was ineffective by failing to object to the nonunanimous verdict. *See State v. Amaral*, 239 Ariz. 217, 220, ¶ 11 (2016) ("If the alleged facts would not have probably changed the verdict or sentence, then the claim is subject to summary dismissal.").

**CONCLUSION**

¶27          For the foregoing reasons, we affirm the court's order.



AMY M. WOOD • Clerk of the Court
FILED:    AA