NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

IN RE TERMINATION OF PARENTAL RIGHTS AS TO M.R.

No. 1 CA-JV 23-0023
FILED 8-31-2023

Appeal from the Superior Court in Maricopa County
No. JD533852
The Honorable Ashley V. Halvorson, Judge

**AFFIRMED**

COUNSEL

Maricopa County Public Advocate, Mesa
By Suzanne W. Sanchez
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Jennifer L. Thorson
*Counsel for Appellee Department of Child Safety*

Sacks Tierney PA, Scottsdale
By Katya M. Lancero
*Counsel for Appellee Pueblo of Laguna*

---

**MEMORANDUM DECISION**

Vice Chief Judge Randall M. Howe delivered the decision of the court, in which Judge Jennifer M. Perkins and Judge Daniel J. Kiley joined.

---

**H O W E**, Judge:

**¶1** Juan A. ("Father") appeals the juvenile court's order terminating his parental rights to his daughter, M.R., born in December 2020, on the grounds of abandonment and out-of-home placement for 15 months. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

**¶2** We view the facts in the light most favorable to sustaining the juvenile court's order. *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 2 ¶ 2 (2016). M.R. is an Indian child under the Indian Child Welfare Act ("ICWA"). *See* 25 U.S.C. § 1903(4) (defining "Indian child"). She is considered a descendant of a member of the Pueblo of Laguna of New Mexico Tribe ("Tribe").

**¶3** Father and M.R.'s mother have a history of substance abuse.[1] In December 2020, the Department of Child Safety received a report that M.R. was born substance-exposed and suffered withdrawal symptoms. As a result, the Department took custody of M.R. and placed her with her maternal grandparents, who are enrolled members of the Tribe. The Department also petitioned the juvenile court for M.R.'s dependency because of Father's neglect. In May 2021, the juvenile court found M.R. dependent as to Father and approved family reunification as the case plan.

**¶4** The Department offered Father family preservation services, parent-aide sessions, substance-abuse testing, substance-abuse assessment and treatment, counseling, and visitation with M.R. The Department also tried to contact Father monthly by calling, texting, and emailing to establish services. Father did not respond. At times, the Department was unaware of Father's whereabouts. Maternal grandmother later reported to the Department that Father was homeless.

---

[1] M.R.'s mother is not a party to this appeal; her parental rights were terminated.

¶5            Father failed to participate in visitations with M.R. He last saw M.R. on her first birthday in December 2021. He also failed to participate in any other services that the Department offered. But he self-referred for substance-abuse treatment and received inpatient detox. He claimed at a status conference that he had not received communications about services from the Department. The Department then confirmed that it had sent Father communications to the email address he was using during these proceedings—the same email address that his counsel used to successfully communicate with him.

¶6            The Department petitioned to terminate Father's parental rights, alleging abandonment and out-of-home placement for 15 months. The Tribe moved to intervene, and the juvenile court granted the motion. At the termination hearing, the Department's program supervisor testified that her numerous attempts to reach Father through calls and emails had failed. She also testified that the Department had met Father only once throughout this case. Finally, she testified that Father had not participated in the services that the Department had provided and that termination was in M.R.'s best interests because she would have a stable living environment.

¶7            The Department also elicited testimony from an employee in its Tribal Relations Policy Section. She testified that she had worked for the Department as an ICWA specialist for nine years and that she had been providing qualified expert testimony about ICWA for about 10 years. She testified that Father's custody of M.R. was likely to result in serious emotional or physical damage to her because of his lack of engagement in the preservation services that would help eliminate the risk.

¶8            The Tribe's ICWA expert testified that the Department had made little to no efforts to work with the Tribe. According to her, the Department tried to contact her fewer than 10 times. The Department also did not ask the Tribe to locate and contact Father or to participate in M.R.'s case planning. She also testified that the Department had not made "active efforts" to provide Father with remedial services and rehabilitative programs. Finally, she testified that the Tribe did not "honor [termination and] adoption;" instead, it preferred guardianship.

¶9            The juvenile court found that the Department had proved both grounds for termination of Father's parental rights—abandonment and out-of-home placement for 15 months. It also found that Father's continued custody of M.R. was likely to result in serious emotional or physical damage to M.R. and that termination was in M.R.'s best interests. It therefore terminated Father's parental rights.

¶10 Father timely appealed. We have jurisdiction. *See* Ariz. Const. art. 6, § 9; A.R.S. §§ 8–235(A), 12–120.21(A)(1), –2101(A)(1).

## DISCUSSION

¶11 Father argues that the State did not prove by clear and convincing evidence that the Department made "active efforts" to prevent the breakup of the family under ICWA. A juvenile court's termination determination is reviewed for an abuse of discretion. *E.R. v. Dep't of Child Safety*, 237 Ariz. 56, 58 ¶ 9 (App. 2015). The juvenile court is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts. *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334 ¶ 4 (App. 2004). Due process requires that we assess whether a reasonable factfinder could conclude, based on the record, that the Department met its clear and convincing evidentiary burden to sustain the termination of parental rights. *See Santosky v. Kramer*, 455 U.S. 745, 747–48 (1982). We will uphold the court's findings of fact "if supported by adequate evidence in the record." *Christy C. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 445, 451–52 ¶ 19 (App. 2007) (quoting *State v. Smith*, 123 Ariz. 243, 247 (1979)).

¶12 To terminate parental rights, the juvenile court must find at least one statutory ground under A.R.S. § 8–533 by clear and convincing evidence and must find that termination is in the child's best interests by a preponderance of the evidence. A.R.S. § 8–537(B); *Jennifer S. v. Dep't of Child Safety*, 240 Ariz. 282, 286 ¶ 15 (App. 2016). ICWA applies when an Indian child is the subject of a termination. *See Yvonne L. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 415, 419 ¶ 20 (App. 2011). Before terminating parental rights under ICWA, the Department must prove (1) beyond a reasonable doubt that the "continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child," Ariz. R.P. Juv. Ct. 353(d)(1); 25 U.S.C. § 1912(f), and (2) prove by clear and convincing evidence that "active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that those efforts have proven unsuccessful," 25 U.S.C. § 1912(d); *Yvonne L.*, 227 Ariz. at 420 ¶ 20.

¶13 "Active efforts" mean "affirmative, active, thorough, and timely efforts intended primarily to maintain or reunite an Indian child with his or her family." 25 C.F.R. § 23.2. The parents must be assisted "through the steps of a case plan and with accessing or developing the resources necessary to satisfy the case plan." *Id.* Active efforts "should be conducted in partnership with the Indian child and the Indian child's

parents . . . and Tribe." *Id*. They should be "tailored to the facts and circumstances of the case." *Id*. "[A]ctive efforts demand more than merely drawing up a reunification plan and leaving the parent to use his or her own resources to bring it to fruition." *Yvonne L.*, 227 Ariz. at 423 ¶ 34 n.17 (cleaned up). But "neither ICWA nor Arizona law mandates that [the Department] provide every imaginable service or program designed to prevent the breakup of the Indian family before the court may find that 'active efforts' took place." *Id*. at 423 ¶ 34. Further, the Department cannot force parents to engage in services but must provide them with the "necessary 'time and opportunity to participate in programs designed to help [them] become' effective parents." *Id*. (quoting *Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994)).

¶14        Relevant examples of active efforts include (1) identifying appropriate services and actively assisting parents to obtain those services; (2) inviting representatives of the child's Tribe to provide the family with support and services; (3) implementing "all available and culturally appropriate family preservation strategies and facilitating the use of remedial and rehabilitative services provided by the child's Tribe"; (4) supporting visitation with parents "in the most natural setting possible"; (5) identifying community resources and assisting the parents in accessing them; (6) "[m]onitoring progress and participation in services"; and (7) considering alternative methods of addressing the parents' needs where services are unavailable. 25 C.F.R. § 23.2.

¶15        Here, reasonable evidence shows that the Department made active, thorough, and timely efforts to provide remedial services and rehabilitative programs to prevent the family breakup. The record supports the juvenile court's finding that the Department offered family preservation services, parent-aide sessions, substance-abuse testing, substance-abuse assessment and treatment, counseling, and visitation services. The Department thus provided Father with the necessary time and opportunity to participate in these programs designed to help him become an effective parent. *See Yvonne L.*, 227 Ariz. at 423 ¶ 34. The Department actively tried to communicate with Father through phone calls, text messages, email, in-person meetings, and service letters. And these attempts failed, despite the Department's using correct channels to communicate with Father. The Department was not required to force Father to engage in the offered services. *Id*. Lastly, termination would not separate M.R. from her cultural heritage since she was placed with her grandparents, who are members of the Tribe. Therefore, Father has shown no error.

**¶16**      Father also argues that the juvenile court erred in finding that his custody of M.R. was likely to result in serious emotional or physical damage to M.R. He contends that the finding was not based on a qualified expert witness testimony because the Department's ICWA witness lacked expertise about "the parenting norms" of the Tribe and "substance abuse and its impact on parents of Indian Children." But as the Department points out, Father failed to challenge the Department's ICWA witness's qualifications in the juvenile court, despite his counsel's extensive examination of her during the termination hearing. *See Estate of Reinen v. N. Ariz. Orthopedics, Ltd.*, 198 Ariz. 283, 286–87 ¶ 9 (2000) (explaining that failure to object to the witness's qualifications before or during the witness's testimony waived any objection to the witness's qualifications). Father has therefore waived this argument.

## CONCLUSION

**¶17**      We affirm.



AMY M. WOOD • Clerk of the Court
FILED:   AA